BANKERS MUTUAL CASUALTY COMPANY *v.* MINNE-APOLIS, ST. PAUL AND SAULT SAINTE MARIE RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 141. Argued January 22, 1904.—Decided February 23, 1904.

Although suits may involve the Constitution or laws of the United States, they are not suits arising thereunder where they do not turn on a controversy between the parties in regard to the operation thereof, on the facts. Nor does a case arise under the Constitution or laws of the United States unless it appears from plaintiff's own statement, in the outset, that some title, right, privilege or immunity on which recovery depends will be defeated by one construction of the Constitution or laws of the United States or sustained by the opposite construction.

In an action commenced in the Circuit Court, by a citizen of one State against a railroad company, citizen of another State, for damages for a loss of a registered mail package, where the plaintiff relied on principles of general law applicable to negligence and to the liability of defendant if there was negligence, the fact that the suit involved the relations of the Railroad Company to the government did not put in controversy the construction of any provision of the Constitution or of any law of the United States on which the recovery depended and the judgment of the Circuit Court of Appeals was final and the writ of error is dismissed.

THIS action was originally brought in the Circuit Court of the United States for the District of Minnesota by the German State Bank of Harvey, North Dakota, for which the Bankers Mutual Casualty Company of Iowa was subsequently substituted as plaintiff, against the Minneapolis, St. Paul and Sault Sainte Marie Railway Company of Minnesota. The averments gave jurisdiction on the ground of diversity of citizenship. A demurrer to the original complaint was sustained for reasons stated by Lochren, J. 113 Fed. Rep. 414. Thereupon "an amended and substituted complaint" was filed, and on demurrer judgment was rendered in favor of defendant, and affirmed on error by the Circuit Court of Appeals for the Eighth Circuit. 117 Fed. Rep. 434. This writ or error was then allowed.

The amended complaint was as follows:

"That the Bankers Mutual Casualty Company, during all of the year A. D. 1900, and up to the present time, is and was a corporation, duly organized under the laws of the State of Iowa, and a citizen of said State, with its principal place of business at Des Moines, in said State, engaged in the business of insuring banks against loss from robbery and burglary, including the insurance against loss of packages of money, while in the course of transmission from place to place, while regularly carried in the United States registered mails.

"That defendant, during all of the year A. D. 1900, and up to the present time, is and was a corporation, duly organized under the laws of the State of Minnesota and a citizen of said State, with its principal place of business at Minneapolis, in

said State, engaged in operating a line of railroad situated in the States of Minnesota and North Dakota.

"That the German State Bank, during all of the year A. D. 1900, and up to the present time, is and was a corporation, duly organized under the laws of the State of North Dakota, and a citizen of said State, with its principal place of business at the town of Harvey, in said State, engaged in a general banking business at said town.

"That during the whole year A. D. 1900, and up to the present time, defendant is and was engaged in carrying the United States mails between the terminal and intermediate stations located upon and along its said line of railroad, under and by virtue of the statutes and laws of the United States, and the regulations established by the Post Office Department of the United States government, and in pursuance of a fixing of the compensation to be paid to defendant by the United States government for carrying said mails and the person in charge thereof, based upon the last preceding reweighing of said mails and upon notice in writing, in the usual form, from the Second Assistant Postmaster General of the United States, requiring defendant to carry said mails and the person in charge thereof.

"That said depot, at or near the town of Harvey, was an intermediate station on that part of defendant's said line of railroad within the State of North Dakota, which extends from the station at Hankinson to the station at Portal, and the railroad line between said stations at Hankinson and Portal is designated by and known to the Post Office Department of the United States, as railroad route No. 161,018, being a distance of 344.58 miles, and the compensation fixed by the United States Post Office Department to be paid annually by the United States to defendant during all of the period herein referred to for the carriage of said mails and the person in charge thereof is and was the sum of sixty-four thousand eight hundred and fifteen and 49-100 dollars ($64,815.49), at the rate of $188.10 per mile.

"That this substituted plaintiff is not in possession of the aforesaid notice to defendant, and is unable to attach to this petition said notice or a true copy thereof.

"That during all of the period hereinbefore referred to there was no contract of any kind between defendant and the United States government concerning or providing for the carriage, by defendant, of said mails, or any part thereof, or of the person in charge of said mails, upon or along defendant's said line of railway or any part thereof.

"That on or about the 10th day of November, A. D. 1900, the Metropolitan Bank, a corporation organized under the laws of the State of Minnesota, was engaged in transacting a general banking business in the city of Minneapolis, in said State, and on or about said date said bank deposited in the United States mails, at Minneapolis, in said State, a package containing lawful money of the United States, commonly known and called currency, of the actual cash value of three thousand dollars ($3000.00), in an envelope properly addressed to the German State Bank at Harvey, North Dakota, and prepaid thereon the postage and registration fee, and said package was thereupon duly registered by the postmaster of said post office. That from and after the time of depositing said package in said post office at Minneapolis, said package and its contents was the property of said German State Bank.

"That said registered package was covered by insurance and indemnity against loss while in transit through the United States mails from Minneapolis to said Harvey, under a policy of insurance issued by said Bankers Mutual Casualty Company, the substituted plaintiff, said insurance being for the use and benefit of said German State Bank. That a true copy of said policy is hereto attached as part hereof, and marked Exhibit 'A.'

"That on or about November 10th, A. D. 1900, and while said package was in good safety and prior to the departure of the train carrying said registered package, said Metropolitan Bank deposited in the United States mails, at the post office

in said city of Minneapolis, a letter of advice, properly addressed to said Bankers Mutual Casualty Company at Des Moines, Iowa, with postage thereon prepaid; that said letter of advice notified said Bankers Mutual Casualty Company, of the shipment by said Metropolitan Bank of said sum of three thousand dollars to said German State Bank of Harvey, and upon said mailing of said letter of advice, the contract of insurance and indemnity of said registered package of currency immediately attached thereto and became a valid and complete contract of insurance and indemnity by the said Bankers Mutual Casualty Company, in favor of said German State Bank.

"That in the regular course of transmission of the United States mails between the said city of Minneapolis and the said town of Harvey, said registered package was duly delivered by the post office officials of said city of Minneapolis to the railway mail clerk or other proper postal official, and placed in a railway mail car or other proper car, the property of defendant, then standing upon defendant's said line of railway, and was transported by defendant railway company to defendant's railway depot or station, situated in or near said town of Harvey, North Dakota.

"That prior to the arrival of said registered package at said town of Harvey, the same, together with other registered mail packages and other mail matter, was, by said railway mail clerk in charge of said mails, duly inclosed in a regular United States mail sack or mail pouch, which said mail sack or mail pouch was securely locked or fastened by the official government strap and lock.

"That from and after the time of the depositing of the mail sack containing said currency in defendant's mail car at Minneapolis, Minnesota, for the purpose of transit and transportation for delivery at Harvey, North Dakota, the same was under the exclusive care, custody and control of the postal clerks, regularly employed by the United States government and in charge of the mail in said car; that the mail sacks containing

said registered package, from and after the time of its delivery in said postal car, to the proper postal clerks therein, up to and including the delivery of said mail sack at Harvey, North Dakota, was in the exclusive care, custody and control of the said postal clerks or authorities.

"That upon the arrival of defendant's said train and postal car at said town of Harvey, North Dakota, said railway mail clerk or other postal official, between eleven and twelve o'clock of said night, delivered said mail sack, duly locked, together with said registered package of currency therein contained, to one James Magson, the night station agent, or night operator of defendant at said town of Harvey; that said night station agent, or night operator, was not sworn as an official or employé of the Post Office Department of the United States government, as required by law, but was then and there employed and duly authorized by the defendant to receive and take charge of all mail matter received over defendant's said line of railway, at said town of. Harvey, including the mail sack or mail pouch containing said package of currency, and to deposit same in defendant's depot, at Harvey, North Dakota, and did so receive, take charge of and deposit said mail sack or mail pouch.

"That defendant was not sworn as an official or employé of the Post Office Department of the United States government, and had not subscribed or sworn to any oath relating to or concerning the carriage of the United States mails, or the performance of defendant's duties as such carrier of the mails.

"That said section 713 of the postal laws and regulations of the United States of the year A. D. 1893, which was in force at the time of the receipt and transmission of said registered package is in words and figures as follows, to wit: 'The railroad company will also be required to take the mails from and deliver them into all intermediate post offices and postal stations located not more than eighty rods from the nearest railroad station at which the company has an agent or other representative employed.'

"That said post office at Harvey was an intermediate post

office, and was located not more than eighty rods from defendant's railroad station, or depot, at or near said town of Harvey.

"That under said postal regulation it was the duty of said defendant to provide a sufficient and safe receptacle or place for the safety and security of said mail, while in its said custody, also to safely care for and guard said mail sack and its contents during the night, also to safely deliver the same to the postmaster or postmistress at the post office in said town of Harvey, North Dakota.

"But neglecting its said duty in the premises, defendant wholly failed and neglected to provide any receptacle or place for the safe or secure keeping of mail, and also failed to place a duly sworn official in charge of said mail sack, and further wholly failed to safely care for or guard said mail sack and its contents, and also wholly failed to safely deliver the same at the post office to the postmaster in said town of Harvey. That by reason of defendant's said negligence, some person, to this plaintiff unknown, in some manner not known to this plaintiff, obtained access to said mail sack and opened the same, and abstracted or took therefrom said registered package, whereby the same was wholly lost to said German State Bank.

"That one George A. Soule was then the road master or foreman employed by said defendant at said town of Harvey, or one of defendant's employés or servants, but was not sworn in as an official or employé of the Post Office Department, as required by law, and was not authorized or employed by defendant to take charge of said mail sack or to perform any duty in relation thereto and had no right of access to said mail sack, or to the mail therein contained, by virtue of his said employment by defendant.

"That said Soule had previously unlawfully obtained and caused to be made, a key to the United States government mail sacks or mail pouches, and personally, or with the aid and assistance of some person or persons, to this plaintiff unknown, did enter one of the rooms contained in the said depot building, where said mail sack or mail pouch had been placed by

defendant's operator or night agent, on the floor or wall of said room, and not in any separate room, closet or other safe receptacle, capable of being securely fastened against any intruder or unauthorized person, by lock and key or otherwise. That said room was not designed for or capable of safely keeping valuable articles of property.

"That said Soule, or other person, had no right of access to said room, or to said mail sack or mail pouch, but through the negligence of defendant and its said night operator or night agent, as set forth in this complaint, did gain entrance to said room and obtain access to said mail sack or mail pouch, and the mail matter therein contained, and did find said mail sack or mail pouch situated or placed as above set forth, so that the same was readily accessible to any person gaining entrance to said room, and did find said mail sack or mail pouch wholly unprotected and unguarded by said night operator or otherwise.

"That said Soule, or other person, by reason of the aforesaid negligence of said defendant and its said night agent or night operator, did obtain access to said mail sack or mail pouch and did unlock the same and abstract and take therefrom the aforesaid registered package, containing said three thousand dollars ($3000) in currency and did unlawfully convert the same to his use and benefit, and the same has never been delivered or, returned to said German State Bank or to said Metropolitan Bank of Minneapolis, or to this plaintiff, the Bankers Mutual Casualty Company, or to any one for the benefit of any of them."

[Then followed averments of payment to the German State Bank by the Casualty Company under its policy of insurance; of demand on defendant for repayment, and refusal; of subrogation and assignment; and prayer for judgment.]

*Mr. A. U. Quint,* with whom *Mr. Horatio F. Dale, Mr. William Connor* and *Mr. George W. Bowen* were on the brief, for plaintiff in error:

On the jurisdictional question: The case involved the con-

struction and application of the statutes of the United States relating to mails and of the Postal Regulations especially §§ 713 and 1023, edition of 1893. See *Teal* v. *Felton*, 12 How. (N. Y.) 284. The statutes of the United States impose a duty on defendant to safely care for the mail carried by it.

The case also involves the question of exemption of a railway company, carrying the mail, from liability under the rule of *respondeat superior,* either as a public agent of the United States, or as a private corporation for profit, performing the duty in question, established by the statutes of the United States. The Circuit Court of Appeals and the Circuit Court having each held, in effect, that the railway company was entitled to the exemption in this respect which the law gives to one who is strictly a principal public officer.

This case comes within the exception contained in section 6 of the Circuit Court of Appeals Act of 1891, 1 Supp. U. S. Stats. 904. This case falls within the provision above quoted, as construed by several decisions of this court. *Howard* v. *United States to use of Stewart* (1902), 184 U. S. 676, and cases cited; *Robinson & Co.* v. *Belt*, 187 U. S. 41; *McFaddin* v. *Evans-Snider-Buel Co.*, 185 U. S. 505; *Studebaker* v. *Perry*, 184 U. S. 258; *Marande* v. *Tex. & P. R. Co.*, 184 U. S. 173; *Press Pub. Co.* v. *Monroe*, 164 U. S. 105; *Bolles* v. *Outing Co.*, 175 U. S. 262; *Brady* v. *Daly*, 175 U. S. 148; *Auten* v. *United States National Bank*, 174 U. S. 125; *Sonnentheil* v. *C. M. Brewing Co.*, 172 U. S. 401; *Union P. R. Co.* v. *Harris*, 158 U. S. 326; *N. Pac. R. Co.* v. *Amato*, 144 U. S. 465; *Security Trust Co.* v. *Dent*, 187 U. S. 237.

*Mr. Alfred H. Bright* for defendant in error:

As to the jurisdictional question: The Circuit Court acquired jurisdiction on the ground of diverse citizenship and the judgment of the Circuit Court of Appeals is final. *Colorado Cen. Mining Co.* v. *Turck*, 150 U. S. 138; *Borgmeyer* v. *Idler*, 159 U. S. 408; *Loeb* v. *Columbia Township*, 179 U. S. 472; *Am.*

*Sugar Rfg. Co. v. New Orleans,* 181 U. S. 277; *Huguley* v. *Galeton Cotton Mills,* 184 U. S. 290.

The sufficiency of this complaint to sustain the claim of jurisdiction on the ground that it shows a suit "arising under the Constitution or laws of the United States" must be tested by rules firmly settled by the decisions of this court. *Gold-Washing Company* v. *Keyes,* 96 U. S. 199, 202; *Am. Sugar Rfg. Co.* v. *New Orleans,* 181 U. S. 277, and cases cited; *Ansbro* v. *United States,* 159 U. S. 695; *McCain* v. *Des Moines,* 174 U. S. 168; *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, 143; *Starin* v. *New York,* 115 U. S. 248, and cases cited p. 257; *Shreveport* v. *Cole,* 129 U. S. 36; *New Orleans* v. *Benjamin,* 153 U. S. 411, 424; *St. Joseph &c. Ry.* v. *Steele,* 167 U. S. 659; *Hanford* v. *Davies,* 163 U. S. 273, 279; *West. Un. Tel. Co.* v. *Ann Arbor R. R.,* 178 U. S. 239, 243.

Not every suit springing out of facts related to the authority of the United States or to the Constitution or laws thereof, regardless of the nature of that relation, may be said to be a suit arising under the Constitution or laws of the United States. *Metcalf* v. *Watertown,* 128 U. S. 586; *Mail Company* v. *Flanders,* 12 Wall. 130; *Albright* v. *Teas,* 106 U. S. 613; *Hartzell* v. *Tilghmann,* 99 U. S. 547; *Little* v. *Hall,* 18 How. 165; *Blackburn* v. *Portland Mining Co.,* 175 U. S. 571; *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505; *Bausman* v. *Dixon,* 173 U. S. 113; *Pope* v. *Railway Co.,* 173 U. S. 573; *McKenna* v. *Simpson,* 129 U. S. 506; *Provident Savings Soc.* v. *Ford,* 114 U. S. 635; *Price* v. *Railway Co.,* 113 U. S. 218.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

If the jurisdiction of the Circuit Court depended entirely on diversity of citizenship, the judgment of the Circuit Court of Appeals was made final by the act of March 3, 1891, and this writ of error must be dismissed. But it is contended that jurisdiction also rested on the ground that the case arose under

the Constitution or laws of the United States, and that must be tested by the settled rule that a suit does not so arise unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution or some law or treaty of the United States, upon the determination of which the result depends, and which appears on the record by plaintiff's own statement of his case in legal and logical form, such as is required in good pleading. *Tennessee* v. *Union & Planters Bank,* 152 U. S. 454; *Arbuckle* v. *Blackburn,* 191 U. S. 405; *Defiance Water Company* v. *Defiance,* 191 U. S. 184; *Gold-Washing &c. Company* v. *Keyes,* 96 U. S. 199; *Starin* v. *New York,* 115 U. S. 248.

The amended complaint alleged that defendant was engaged in carrying the mails by virtue of the laws and postal regulations of the United States; that a registered package of currency was deposited in the mails, delivered to the mail clerk on the proper mail car belonging to defendant, duly inclosed with other mail matter in a securely locked mail sack, and transported by defendant to its station at Harvey; that the mail clerk between eleven and twelve o'clock at night delivered the mail sack duly locked and containing the registered package of currency to the night station agent of defendant at the town of Harvey, who was duly authorized by defendant to receive and take charge of all mail matter received there on defendant's railway, neither defendant nor the station agent having taken the oath as officials or employés of the Post Office Department; and it was then averred:

"That section 713 of the postal laws and regulations of the United States of the year A. D. 1893, which was in force at the time of the receipt and transmission of said registered package, is in words and figures as follows, to wit: 'The railroad company will also be required to take the mails from and deliver them into all intermediate post offices and postal stations located not more than 80 rods from the nearest railroad station at which the company has an agent or other representative employed.'

"That said post office at Harvey was an intermediate post office and was located not more than 80 rods from defendant's railroad station, or depot, at or near said town of Harvey.

"That under said postal regulation it was the duty of said defendant to provide a sufficient and safe receptacle or place for the safety and security of said mail, while in its said custody; also to safely care for and guard said mail sack and its contents during the night; also to safely deliver the same to the postmaster or postmistress at the post office in said town of Harvey, North Dakota.

"But neglecting its said duty in the premises, defendant wholly failed and neglected to provide any receptacle or place for the safe or secure keeping of mail, and also failed to place a duly sworn official in charge of said mail sack, and further wholly failed to safely care for or guard said mail sack and its contents, and also wholly failed to safely deliver the same at the post office to the postmaster in said town of Harvey."

And further, that defendant's roadmaster entered the depot, unlocked the mail bag with a key he had unlawfully caused to be made, abstracted the package of currency and converted its contents; that the room where the mail bag was placed was "not designed or capable of safely keeping valuable articles or property," and that it was through the negligence of defendant and its station agent that the man gained entrance to the room and obtained access to the mail bag.

It will be perceived that plaintiff relied on principles of general law applicable to negligence, and to the liability of defendant if there were negligence, and nowhere asserted a right which might be defeated or sustained by one or another construction of the Constitution or of any law of the United States. The complaint did indeed deny that there was any contract between defendant and the government, but that was merely a conclusion of law, inconsistent with the statutes, and with the facts alleged. And whether the duty counted on was imposed by law, or arose from contract, the question remained whether defendant was a public agent of the United

States and the consequences of that relation, and the construction of no provision of the Constitution or of any law of the United States on which the recovery depended was put in controversy.

In other words, no definite issue in respect of a right claimed under the Constitution or any law of the United States was deducible from plaintiff's statement of its case, and if the postal regulations could, under circumstances, be regarded as laws of the United States creating a right which might be denied or secured according to one construction or another, it did not appear that the construction of the extract from section 713 of those regulations was in any way in dispute or could have been. And the averments of the complaint cannot be helped out by resort to the other pleadings or to judicial knowledge. *Mountain View &c. Company* v. *McFadden,* 180 U. S. 533; *Arkansas* v. *Kansas and Texas Coal Company,* 183 U. S. 185.

The Constitution empowers Congress to establish post offices and post roads, and Congress has passed laws accordingly, pursuant to which defendant was carrying the mails. But the alleged cause of action was not referable to those laws or put on the ground that defendant was an officer or public agent of the United States. That was matter of defence and could not be and was not resorted to by plaintiff to obtain jurisdiction. *Tennessee* v. *Union & Planters Bank,* 152 U. S. 454.

A writ of error to the judgment of a state court stands on different ground. Such was *Teal* v. *Felton,* 12 How. 284, in which the postmaster relied on an act of Congress in defence, and the writ was properly granted under the twenty-fifth section of the judiciary act.

Cases against United States officers as such, or on bonds given under acts of Congress, or involving interference with Federal process, or the due faith and credit to be accorded judgments, are not in point; nor does the case fall within the ruling that a corporation created by Congress has a right to invoke the jurisdiction of the Federal courts in respect to any litigation it may have except as specially restricted. The

doctrine of *Pacific Railroad Removal Cases,* 115 U. S. 1, cannot be extended so as to embrace cases like the present. *Shoshone Mining Company* v. *Rutter,* 177 U. S. 505, 509.

On the other hand, such cases as *Provident Savings Society* v. *Ford,* 114 U. S. 635; *Metcalf* v. *Watertown,* 128 U. S. 586; *Colorado Central Mining Company* v. *Turck,* 150 U. S. 138; *St. Joseph &c. R. R. Co.* v. *Steele,* 167 U. S. 659; *Pratt* v. *Paris Gas Light &c. Company,* 168 U. S. 255; *Western Union Telegraph Company* v. *Ann Arbor Railroad Company,* 178 U. S. 239; *Gableman* v. *Peoria &c. Railway Company,* 179 U. S. 335, show that suits though involving the Constitution or laws of the United States are not suits arising under the Constitution or laws where they do not turn on a controversy between the parties in regard to the operation of the Constitution or laws, on the facts.

In *Price* v. *Pennsylvania Railroad Company,* 113 U. S. 218, which was a writ of error to the Supreme Court of Pennsylvania, the question arose whether a railway mail clerk was a passenger within a certain statute of Pennsylvania, and Mr. Justice Miller, delivering the opinion, said:

"The plaintiff argues here, and insisted throughout the progress of the case in the state courts, that by reason of certain laws of the United States as applied to the facts found in the verdict of the jury, the decedent was a passenger, and the Supreme Court erred in holding otherwise. These laws are thus cited in the brief of plaintiff's counsel.

"'Act of March 3, 1865, § 8, 13 Stat. 506, provides that 'For the purpose of assorting and distributing letters and other matter in railway post offices, the Postmaster General may, from time to time, appoint clerks who shall be paid out of the appropriation for mail transportation.'

"'§ 4000 Rev. Stat. requires that 'Every railway company carrying the mail shall carry on any train which may run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same.'

"We do not think these provisions either aid or govern the construction of the proviso in the Pennsylvania statute.

"The person thus to be carried with the mail matter, without extra charge, is no more a passenger because he is in charge of the mail, nor because no other compensation is made for his transportation, than if he had no such charge, nor does the fact that he is in the employment of the United States, and that defendant is bound by contract with the government to carry him, affect the question. It would be just the same if the company had contracted with any other person who had charge of freight on the train to carry him without additional compensation. The statutes of the United States which authorize this employment and direct this service do not, therefore, make the person so engaged a passenger, or deprive him of that character, in construing the Pennsylvania statute. Nor does it give to persons so employed any *right* as against the railroad company, which would not belong to any other person in a similar employment, by others than the United States.

"We are, therefore, of opinion that no question of Federal authority was involved in the judgment of the Supreme Court of Pennsylvania, and the writ of error is accordingly dismissed."

Although that case was a writ of error to a state court it was held, in effect, that it was too obvious for controversy that the acts of Congress referred to did not give the mail clerk any particular right as against the railroad company in respect of negligence and therefore this court declined to entertain the writ.

We repeat that the rule is settled that a case does not arise under the Constitution or laws of the United States unless it appears from plaintiff's own statement, in the outset, that some title, right, privilege or immunity on which recovery depends will be defeated by one construction of the Constitution or laws of the United States, or sustained by the opposite construction. *Gold-Washing &c. Company* v. *Keyes*, 96 U. S.

199; *Starin* v. *New York*, 115 U. S. 248; *New Orleans* v. *Benjamin*, 153 U. S. 411; *Blackburn* v. *Portland Gold Mining Company*, 175 U. S. 571; *Shoshone Mining Company* v. *Rutter*, 177 U. S. 505.

Tested by this rule, the jurisdiction of the Circuit Court depended entirely on diversity of citizenship and not in any degree on grounds making the case one arising under the Constitution, laws or treaties of the United States.

*Writ of error dismissed.*

Mr. Justice White dissented.