## MALONE v. GARDNER et al.
### No. 3325.

Circuit Court of Appeals, Fourth Circuit.
Nov. 28, 1932.

W. W. Goldsmith, of Beckley, W. Va. (File, Goldsmith & Scherer and Ashton File, all of Beckley, W. Va., on the brief), for appellant.

J. W. Maxwell, of Beckley, W. Va., and Clarence E. Weisell, of Cleveland, Ohio (Oscar J. Horn, of Cleveland, Ohio, on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

P. O. Malone, a locomotive engineer in the employ of the Chesapeake & Ohio Railway Company, brought this suit in equity in the District Court on his own behalf as plaintiff and as the representative of a large number of other locomotive engineers, similarly engaged, against certain other locomotive engineers employed by the railway company, including Lynn Gardner and W. L. Burk, who were sued in their own right and as officers of Division 101 of the Grand International Brotherhood of Locomotive Engineers. The bill of complaint alleges that prior to the time when the employment of the parties to the suit began, the railway company and the brotherhood made a contract wherein the railway system was divided into seniority districts, and certain seniority rights were established and conferred upon locomotive engineers. Amongst the seniority districts set up were the New River seniority district, which comprised the main line of the railway from Hinton to Handley, W. Va., and intermediate branch lines, and the Alleghany seniority district, which comprised the main line from Hinton, W. Va., to Clifton Forge, Va., and intermediate branch lines. The railway company agreed to maintain seniority rosters for each district upon which the name of an employee should be placed when he was promoted to the grade of engineer therein; that the engineers in

each district should have preference in all matters of employment in the order of seniority; that each engineer should be restricted to the district to which he was assigned and would not be allowed to work in other districts when engineers therein were available; and that if an engineer should be transferred from one district to another, he should rank as a new man therein and become junior to all pre-existing appointees. This contract, the bill shows, became a part of the contract of employment between the railway company and the plaintiff and his associates when they entered the employ of the railway company.

The bill of complaint further shows that the defendants are engineers operating locomotives in the Alleghany seniority district, while the plaintiff and his associates are performing work as engineers in the New River seniority district; and that the defendants have entered into a conspiracy to interfere with the contracts of the plaintiff and his associates, for the purpose of coercing or persuading the railway company to permit the defendants to do work in the New River seniority district as engineers; and that the conspiracy has been successful, and the railway company has been induced to commit numerous breaches of the contracts of employment of the plaintiff and his associates and has permitted the defendants to do work in the New River seniority district which the plaintiff and his associates are entitled to do by reason of their seniority rights, and hence they have been deprived of the benefits and advantages of their contracts of employment.

The plaintiff prays that a temporary restraining order be granted, restraining the defendants from interfering with, influencing, or coercing the railway company to commit a breach of the contracts, or from doing any work for the railway company in the New River seniority district which the plaintiffs are ready and willing to do and perform; and that upon a final trial of the cause, a permanent injunction to the same effect be granted.

It is alleged in the bill that the federal court has jurisdiction of the suit because it is a suit of a civil nature which arises under the Constitution and laws of the United States, particularly under the Act of Congress of May 20, 1926, known as the Railway Labor Act, 44 Stat. 577, 45 U. S. C. §§ 151–163 (45 USCA §§ 151–163) and the laws of the United States relating to interstate commerce. The defendants in due time moved the court to dismiss the bill on the ground that the District Court did not have jurisdiction to entertain the suit, because no federal question was involved; and on the further ground that the bill was otherwise defective in that it failed to state sufficient facts to show a cause of action in equity. The District Judge, after argument, sustained the motion and dismissed the bill on the ground that it did not present for determination any question arising under the Constitution or laws of the United States of which the federal court could take cognizance. We are in accord with this view of the case, and shall confine our discussion to this point.

While the plaintiff refers generally to the laws of the United States relating to interstate commerce, no act other than the Railway Labor Act of 1926 is specifically referred to either in the pleadings or the argument. The provisions of the Railway Labor Act which seem to be relied on are found in subdivisions (1) and (2) of section 2, 45 U. S. C. § 152 (45 USCA § 152 (1, 2), as follows:

"§ 152. *General Duties*

"First. *Duty of Carriers and Employees to Settle Disputes.* It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

"Second. *Consideration of Disputes by Representatives.* All disputes between a carrier and its employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carriers and by the employees thereof interested in the dispute."

The plaintiff points out that these provisions of the act impose upon the defendants the duty to exert every reasonable effort to maintain the agreements between the railway company and its employees respecting the seniority rights of the engineers; and that in defiance of the law, they have induced the railway company to break the agreements and to deny the plaintiff's rights. It is contended, therefore, that the facts set out in the bill present in good faith a substantial controversy which involves the questions as to what is the meaning and effect of the statute when considered in its bearing upon the agreements described, and what is the right of the plaintiff to enjoin the defendants from the performance of those acts which violate the statutory duty imposed upon them. In order to answer these questions it is said that a consideration of the meaning or applica-

bility of the Railway Labor Act is required, and hence the case comes within the meaning of the federal statute conferring jurisdiction on the District Courts where the matter in controversy arises under the Constitution or laws of the United States. 28 U. S. C. § 41 (1) (a), 28 USCA § 41 (1) (a).

It has long been decided that a suit does not arise under the laws of the United States within the meaning of this jurisdictional requirement unless it really and substantially involves a dispute respecting the validity, construction, or effect of such a law, upon the determination of which the result depends. Unless this is the case, the federal court does not necessarily have jurisdiction even though the suit to enforce the right relied upon takes its origin in the laws of the United States, as, for instance, a right to land acquired under a law of the United States. Shulthis v. McDougal, 225 U. S. 561, 569, 32 S. Ct. 704, 56 L. Ed. 1205. The mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit, for if the plaintiff does not really rely upon a federal statute for his right to recover, or if the claim of right is plainly without color of merit or frivolous, jurisdiction does not exist. The Fair v. Kohler Die & Specialty Co., 228 U. S. 22, 33 S. Ct. 410, 57 L. Ed. 716; Bankers' Mut. Casualty Co. v. Minn., St. P. & S. S. M. R. Co., 192 U. S. 371, 380, 24 S. Ct. 325, 48 L. Ed. 484; Excelsior Wooden Pipe Company v. Pacific Bridge Co., 185 U. S. 282, 287, 288, 22 S. Ct. 681, 46 L. Ed. 910. And so if it appears from well-settled decisions of the courts that the statute invoked can have no real bearing upon the matter in issue, it cannot be said to arise under a law of the United States. Corrigan v. Buckley, 271 U. S. 323, 329, 46 S. Ct. 521, 70 L. Ed. 969; Western Union Tel. Co. v. Ann Arbor R. Co., 178 U. S. 239, 20 S. Ct. 867, 44 L. Ed. 1052.

When these established rules are applied to the case stated in the bill, it will be seen that the construction or applicability of the Railway Labor Act is not really involved in this case. The suit relates to an agreement of employment whereby the plaintiff acquired certain contract rights of value; but neither the agreement nor the rights secured thereby were founded upon the Labor Act, nor is their construction or effect in any way affected thereby. The immediate purpose of the suit is to secure an injunction to prevent further violations of the agreement, and the argument seems to be that the act of Congress is involved because it prescribes

that it is the duty of employees, such as the defendants, to exert every reasonable effort to maintain agreements of this kind and to settle all disputes arising out of such agreements in order to avoid any interruption to commerce. If the federal act imposed a duty of legal validity in the sense that it was made enforceable by the courts, or if the construction of the act gave rise to some substantial difference of opinion as to its meaning, jurisdiction might be found to exist. But it does not appear to us that any legally enforceable duty in these respects was created; and the doubts which existed in the past as to the meaning of the quoted provisions of the act have been so conclusively solved by decisions of the Supreme Court that no substantial federal question survives at this time.

Similar provisions to subsections 1 and 2 of section 2 of the Railway Labor Act of 1926 (45 USCA § 152 (1, 2) were contained in title 3 of the Transportation Act of 1920, § 301, 41 Stat. 469, 45 U. S. C. § 132 (45 USCA § 132) which was as follows: "§ 132. *Disputes Between Carriers and their Officers, Agents, and Employees to be Decided by Conference, if Possible; Reference to Boards.* It shall be the duty of all carriers and their officers, employees and agents to exert every reasonable effort and adopt every available means to avoid any interruption to the operation of any carrier growing out of any dispute between the carrier and the employees or subordinate officials thereof. All such disputes shall be considered and, if possible, decided in conference between representatives designated, and authorized so to confer by the carriers, or the employees or subordinate officials thereof, directly interested in the dispute. If any dispute is not decided in such conference, it shall be referred by the parties thereto to the board which under the provisions of this chapter is authorized to hear and decide such dispute."

The history of this legislation is referred to in the opinion of the Chief Justice in Texas & N. O. R. Co. v. Brotherhood of Ry. & Steamship Clerks, 281 U. S. 548, 560, 50 S. Ct. 427, 74 L. Ed. 1034. Prior decisions of the court with reference to title 3 of the Transportation Act of 1920, viz., Pennsylvania R. Co v. U. S. R. Labor Board, 261 U. S. 72, 43 S. Ct. 278, 67 L. Ed. 536, and Pennsylvania R. System & Allied Lines Fed. No. 90 v. Pennsylvania R. Co., 267 U. S. 203, 45 S. Ct. 307, 69 L. Ed. 574, were reviewed. In the first case it was decided that the Railroad Labor Board, constituted under the Transportation Act, had jurisdiction to hear and decide disputes over rules and working con-

ditions upon application of either side when the parties had failed to agree, and also had jurisdiction to decide who might represent the employees in the conferences contemplated by the statute; but that the decisions of the board were not to be enforced by process of the courts. The only sanction was the force of public opinion invoked by the fairness of a full hearing, the intrinsic justice of the conclusion, and the full publication of the violation of such decision by any party to the proceeding. So it was held that interference by injunction with the exercise of the discretion of the board in the matters committed to it was unwarranted; but, on the other hand, that there was no constraint upon the parties to do what the board decided they should do, except the moral constraint of publication of its decisions. In the second case it was specifically held that the federal courts had no power to compel the railroad company against its will to respect and obey a decision of the Labor Board affirming the right of any class of employees to select an independent trade union as their representative.

Following these decisions, as was shown in Texas & N. O. R. Co. v. Brotherhood of Ry. & Steamship Clerks, supra, title 3 of the Transportation Act of 1920 was repealed and the Railway Labor Act of 1926 was enacted to establish a more practicable plan to accomplish the desired result. The court said, at page 564 of 281 U. S., 50 S. Ct. 427, 431: "While adhering in the new statute to the policy of providing for the amicable adjustment of labor disputes, and for voluntary submissions to arbitration as opposed to a system of compulsory arbitration, Congress buttressed this policy by creating certain definite legal obligations. The outstanding feature of the Act of 1926 is the provision for an enforceable award in arbitration proceedings. The arbitration is voluntary, but the award pursuant to the arbitration is conclusive upon the parties as to the merits and facts of the controversy submitted."

It was also shown that the act of 1926 created other definite legal obligations enforceable by legal proceedings. The case turned on the meaning of subsection 3 of section 2 of the Labor Act of 1926, 45 U. S. C. § 152, 45 USCA. § 152 (3), wherein the duty is imposed upon each party to a dispute to respect the rights of the other to designate representatives to act for it during the progress of the controversy without interference, influence, or coercion exercised by its opponent. The Brotherhood of Railway and Steamship Clerks were seeking an injunction to restrain the railroad company from influencing or coercing the clerical employees in the matter of their organization or the designation of their representatives, and the court, finding evidence of improper conduct on the part of the railroad company, held that an injunction should issue because the legal obligation to abstain from interference was created so clearly and definitely that it was enforceable by appropriate proceedings in the courts, although no penalty for its violation was imposed by the statute. The court said: "It is at once to be observed that Congress was not content with the general declaration of the duty of carriers and employees to make every reasonable effort to enter into and maintain agreements concerning rates of pay, rules and working conditions, and to settle disputes with all expedition in conference between authorized representatives, but added this distinct prohibition against coercive measures. This addition cannot be treated as superfluous or insignificant, or as intended to be without effect. Ex parte Public National Bank, 278 U. S. 101, 104, 49 S. Ct. 43, 73 L. Ed. 202. While an affirmative declaration of duty contained in a legislative enactment may be of imperfect obligation because not enforceable in terms, a definite statutory prohibition of conduct which would thwart the declared purpose of the legislation cannot be disregarded."

The whole opinion of the court demonstrates the sharp contrast between the definite obligation to abstain from coercive measures set out in subsection 3 of section 2 of the Railway Labor Act of 1926 (45 USCA § 152 (3) and the general admonitions of subsections 1 and 2 of section 2 of that act directing carriers and their employees to exert every reasonable effort to maintain agreements, and to settle any disputes which may arise. So far as actions in the latter category are concerned, Congress has remained content with a general declaration of duty, for it has repeated in substance the similar provisions of title 3 of the Transportation Act of 1920. The provisions of that title, as the Supreme Court said in Pennsylvania Railroad System & Allied Lines Federation No. 90 v. P. R. Co., 267 U. S. 203, 210, 45 S. Ct. 307, 69 L. Ed. 574, indicated what Congress wished the parties to the dispute to do, but were not intended to be a positive, obligatory law creating enforceable duties; and when Congress repeated substantially the same language in the later act with reference to the observance of agreements and the peaceable settlement of disputes, the intention to withhold authority from the courts to

give effect to it was clear. This interpretation of the statutes announced by the Supreme Court prior to the institution of this suit finally settled the controversy which the plaintiff now seeks to raise, and, under the established rule, his contention may not now be recognized as the basis of jurisdiction.

Congress has not given the power to the federal courts to try all actions for breach of contract between railroad employees. It may be noted in passing that the Railway Labor Act of 1926 does not in terms apply to a controversy between employees such as we have here, but is directed to the maintenance of agreements between carriers and employees and the settlement of disputes between them. The decision of this case, however, is based on the settled rule that the federal courts have not been given jurisdiction to try all actions arising out of agreements between carriers and their employees, or to require them to respect and maintain their agreements.

The decree of the District Court dismissing the case for lack of jurisdiction is therefore affirmed.