## LUND v. WOODENWARE WORKERS UNION et al.

District Court, D. Minnesota, Third Division.
May 19, 1937.

608

O'Brien, Horn & Stringer, of St. Paul, Minn., for plaintiff.

Leonard, Street & Deinard and Hyman Edelman, all of Minneapolis, Minn., for defendants.

NORDBYE, District Judge.

The defendants have appeared specially for the purpose of moving to vacate and quash plaintiff's application and motion for temporary injunction on the grounds, first, that this court does not have jurisdiction to entertain this suit or plaintiff's application for temporary injunction because no federal question is involved and there is no justiciable controversy in this forum; and second, that this court is without jurisdiction to grant any temporary injunction or any injunctive relief for the reason that the bill fails to allege compliance with the provisions of the so-called Norris-La Guardia Act, 29 U.S.C.A. §§ 101–115, as a condition precedent to the seeking or obtaining of injunctive relief. There are other grounds set forth in the notice of motion, but they refer principally to the failure of plaintiff to comply with various conditions precedent set forth in the Norris-La Guardia Act.

Diversity of citizenship does not exist. Plaintiff seeks to invoke the jurisdiction of this court on the theory that, when the majority of the employees have elected their representatives for collective bargaining and a bargain is so made by them with the employer, the Wagner-Connery Labor Relations Act, 29 U.S.C.A. §§ 151–166 makes unlawful any course of conduct by the minority employees which tends to interfere with the agreement. It is alleged that the minority who are on strike are by acts of violence and intimidation preventing the majority from working, resulting in a closing of plaintiff's factory, and hence the employer cannot carry out the contract of employment made with the representatives of the alleged majority of the employees. Apparently, plaintiff relies on section 159 (a), title 29, U.S.C.A. which reads: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer."

Plaintiff urges that, by reason of this section, the employer has the right to proceed in this court to restrain and enjoin the minority who are now on strike from in any way interfering by violence or intimidation with the contract made between him and the designated representatives of the majority. It is urged that the necessary implication from section 159 (a), 29 U.S.C.A., must be that Congress intended that, once the majority, through their representatives, have entered into a contract with the employer for the purposes of determining wages, hours, conditions of employment, etc., the minority are prevented from taking any steps or any action which will in any way hamper, hinder, or affect the integrity of the contract thus entered into. It is pointed out that the only rights that the minority have under this section are to be found in the proviso which permits the individual employee or group of employees to present grievances to their employer notwithstanding that the majority of the employees have designated representatives for the purposes of collective bargaining. It is further contended that the plaintiff has no adequate remedy at law, because there is no provision in the Wagner Act which permits the employer to petition the National Labor Relations Board in order to obtain its aid to settle the question as to the designation of representatives for collective bargaining.

■ A reading of the Wagner Act impels the view that it was passed primarily to eliminate unfair labor practices on the part of the employer, to guarantee to the employees the right of self-organization, and to secure the right to bargain collectively through representatives of their own choosing. There is no express provision in the act which seeks to affect, limit, or curb unfair practices on the part of labor towards the employer. Unquestionably, the contract that plaintiff contends he has entered into with the representatives of the majority of his employees may be entirely valid, but the mere fact that the employer has made a valid contract with his employees does not, of itself, give rise to any justiciable controversy in federal court under the act. There is no intimation in the act that, merely because an employer has entered into a contract with a majority union, Congress assumed to vest jurisdiction in United States courts to protect or safeguard the integrity of such contract. In fact, it seems reasonably clear that section 159 (a), 29 U.S.C.A., does not necessarily contemplate the making of a contract between the employer and employees, nor does it seek to compel an employer to make any contract with the designated representatives of the majority.

Chief Justice Hughes, in the recent case of National Labor Relations Board v. Jones & Laughlin Steel Corporation, 57 S.Ct. 615, 627, 81 L.Ed. ——, filed April 12, 1937, discusses this section and states:

"The provision of section 9 (a) [which is Section 159 (a), 29 U.S.C.A.] that representatives, for the purpose of collective bargaining, of the majority of the employees in an appropriate unit shall be the exclusive representatives of all the employees in that unit, imposes upon the respondent only the duty of conferring and negotiating with the authorized representatives of its employees for the purpose of settling a labor dispute. This provision has its analogue in section 2, Ninth, of the Railway Labor Act as amended (45 U.S.C.A. § 152, subd. 9), which was under consideration in Virginian Railway Co. v. System Federation No. 40, supra [57 S.Ct. 592, 81 L.Ed. ——]. The decree which we affirmed in that case required the railway company to treat with the representative chosen by the employees and also to refrain from entering into collective labor agreements with any one other than their true representative as ascertained in accordance with the provisions of the act. We said that the obligation to treat with the true representative was exclusive and hence imposed the negative duty to treat with no other. We also pointed out that, as conceded by the government, the injunction against the company's entering into any contract concerning rules, rates of pay and working conditions except with a chosen representative was 'designed only to prevent collective bargaining with any one purporting to represent employees' other than the representative they had selected. It was taken 'to prohibit the negotiation of labor contracts, generally applicable to employees' in the described unit with any other representative than the one so chosen, 'but not as precluding such individual contracts' as the company might 'elect to make directly with individual employees.' We think this construction also applies to section 9 (a) of the National Labor Relations Act (29 U.S.C.A. § 159 (a).

"The act does not compel agreements between employers and employees. It does not compel any agreement whatever. It does not prevent the employer 'from refusing to make a collective contract and hiring individuals on whatever terms' the employer 'may by unilateral action determine.' "

■ When it is recognized that the act only seeks to compel the employer engaged in interstate commerce to deal in collective bargaining with the representatives of the majority, the assumption that plaintiff makes herein, that any act of the employees which interferes with the integrity of a contract that he may have seen fit to negotiate with representatives of the majority gives rise to relief under the Wagner Act in the courts in absence of some action of the Board, seems entirely unsound and erroneous. True, the plaintiff is prohibited from dealing collectively with any other group than the representatives of the majority, and if he presumes to ignore such representatives and deals collectively with some other group, there are ways and means which the National Labor Relations Board may take in order to effectuate the purposes of the act. But our courts would be flooded with injunction suits if plaintiff's contention is to be sustained, and we would have the anomalous situation of the courts endeavoring to determine whether or not the unit which is formed by the majority of the em-

ployees is appropriate for the purposes of collective bargaining, when it is clearly evident that Congress intended that all such questions should be determined by the Labor Board and not by the courts. Whenever a situation requires relief by reason of the violation of section 159 (a), 29 U.S. C.A., it appears unmistakably that the National Labor Relations Board is vested with exclusive jurisdiction to effect the remedy. Section 159 (a), 29 U.S.C.A., must be read in connection with section 159 (b), which provides: "The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

This subsection vests exclusive jurisdiction in the Board to determine the unit in each case which will best effectuate the policies of the chapter in carrying out the collective bargaining with the employer. Whether or not the negotiations that have been entered into with the majority, according to the bill of complaint herein, are such that will insure to the employees the benefits and policies of the chapter, cannot be determined by this court, and no proceedings between employer and employee under the Wagner Act are entitled to any protection by the court until some affirmative action has been taken by the Labor Board, which is clothed with the only authority for such purposes. It is highly significant that the only jurisdiction vested in any court is to be found in the provisions of the act which provide for the enforcement of cease and desist orders and subpoenas issued by the Board, and in determining appeals from orders of the Board. Certainly, there is no substance to the position of the plaintiff who urges that the courts and the Labor Board have some sort of a dual jurisdiction over the ways and means to effectuate and protect the collective bargaining of the employees. Congress undoubtedly had in mind that labor controversies arising from disputes as to the designation of representatives for collective bargaining could best be supervised and administered by a Board skilled in such problems and, as indicative of the intention of Congress to give the Board exclusive jurisdiction, it is significant that in

section 159 (c), 29 U.S.C.A., it is provided: "Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 160 of this title or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives."

Whether or not this subsection gives an employer the right to file a petition with the National Labor Relations Board, so as to invoke its jurisdiction in any controversy over collective bargaining, the court does not now determine. Certainly, it would seem that the Board could initiate any investigation itself, and set up the necessary machinery to effectuate the purposes of the chapter without the petition of either the employer or the employee, but in any event, it seems reasonably clear that the National Labor Relations Board is vested with exclusive jurisdiction in all matters arising under this act, except as may be specifically granted to the courts, with reference to the enforcement of cease and desist orders, subpoenas, and the consideration of appeals.

That Congress did not intend to limit in any way the actions of the minority in protesting against the agreements of the majority and generally in taking legal measures by strike to achieve redress of alleged grievances, is sustained by the provision of section 163, 29 U.S.C.A., which reads: "Nothing in this chapter shall be construed so as to interfere with or impede or diminish in any way the right to strike."

If plaintiff is correct in his position that, whenever a contract has been entered into between an employer and the representatives of the majority of the employees with respect to collective bargaining, a minority cannot take any steps, either by strike or otherwise, to interfere with the performance of that contract, then of course the so-called legal strike, which countenances peaceful picketing, etc., would be entirely banished. While plaintiff claims in this case that he merely seeks to enjoin violence and unlawful acts, nevertheless, if the contract entered into is entitled to the pro-

tection of the courts, any affirmative action which seeks to interfere or cause a breach of that contract would be to the same extent entitled to the protective arm of this court. Whether or not the court would be justified in taking jurisdiction after the National Labor Relations Board has assumed jurisdiction and has approved a contract entered into between the employer and the majority of the employees, the court does not now determine. Suffice it to say that, in absence of a clear intention on the part of Congress to clothe the federal courts with jurisdiction over contracts entered into between an employer and the majority of the employees affecting labor conditions, this court should not proceed to determine this controversy.

Plaintiff presumably is correct in his position when he avers that, under the terms of the Wagner Act, he cannot bargain collectively with the representatives of the minority, and if he assumes to do so, he may be guilty of unfair labor practice, but the determination of his course in dealing with his employees is nevertheless not for the courts. Whether the particular group that it is alleged constitutes a majority should bargain for all the workers in the various departments of plaintiff's factory, is not under the court's supervision. This court cannot assume the authority granted to the Board, nor is there any showing that the Labor Board will ignore the questions which have arisen concerning the representatives of the employees for collective bargaining in this factory. If the employer is powerless under the act to initiate any proceedings, as plaintiff contends, then of course it would seem that Congress might well remedy that situation. If there is to be peace and harmony, as between labor and capital under this act, it would seem that unfair labor practices on the part of the employees should also be amenable to the orders of the Board upon petition of the employer.

The difficulty with the assumption of jurisdiction herein on the theory that plaintiff's case arises under the Wagner Act is due to the very apparent fact that the right that the plaintiff seeks to enforce is not created, either expressly or impliedly, by the federal statute in question, but by this proceeding he seeks to read into the act certain rights on behalf of the employer to proceed in a court of equity which Congress studiously refrained from giving to the employer. The

courts cannot create a right that Congress did not see fit to grant. If any relief were granted under the complaint, the court would be legislating in a field where Congress failed to take action. Further, it should be noticed that there is no provision in the Wagner Act which makes it illegal for a minority to strike and to seek thereby to obtain sufficient strength so as to become the sole bargaining agency. If plaintiff's construction of the act is to be sustained, then an employer could organize a company union and by injunction prevent a so-called employees' union from gaining any foothold, which result would be absolutely contrary to the intent and aims of the act in question.

Counsel for the plaintiff, however, seriously contends that, even though plaintiff is in error as to his construction of the Wagner Act, and if this court should not grant any relief thereunder, nevertheless, he having brought an action which arises under a federal statute, the court can determine the case on its merits even though such a determination is based entirely on local or state grounds; that is, plaintiff seeks to avail himself of the well-recognized principle that, where a federal court has acquired jurisdiction by virtue of a substantial federal question raised in the bill of complaint, the court may not only decide that question, but may also dispose of the entire controversy even though the disposition thereof involves application of local law. Hurn et al. v. Oursler et al., 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. However, before the court can assume to decide the phases of the controversy which arise under the state law, it must appear that a substantial federal question has been raised in the bill of complaint. It is elementary that plaintiff cannot urge relief under a federal statute, which relief under any construction of the statute or on any state of facts could not be granted, and then contend that he has raised a substantial question so as to permit a federal court to deny him relief on the federal grounds, but proceed with the action and determine the other elements of the controversy. The court having determined that under no circumstances can a contract between an employer and his employees be considered a subject matter for a federal court under the Wagner Act, at least in absence of an approval or sanction of that contract by the National Labor Relations Board,

it must necessarily follow that plaintiff's bill of complaint does not present a substantial question arising under a federal statute. It is not necessary for the court to find that the claim is fraudulent or that it lacks good faith. The court merely finds that it does not present a substantial controversy under a federal statute. Certainly, if the court is correct in determining that under no circumstances can such a contract, in absence of other jurisdictional grounds, invoke the protection of the federal courts, then plaintiff's bill cannot be sustained.

In Malone v. Gardner (C.C.A.4) 62 F. (2d) 15, at page 18, Judge Soper, in discussing jurisdiction of the court where the bill alleged a controversy arising under the laws of the United States, stated: "It has long been decided that a suit does not arise under the laws of the United States within the meaning of this jurisdictional requirement unless it really and substantially involves a dispute respecting the validity, construction, or effect of such a law, upon the determination of which the result depends. Unless this is the case, the federal court does not necessarily have jurisdiction even though the suit to enforce the right relied upon takes its origin in the laws of the United States, as, for instance, a right to land acquired under a law of the United States. Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205. The mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit, for if the plaintiff does not really rely upon a federal statute for his right to recover; or if the claim of right is plainly without color of merit or frivolous, jurisdiction does not exist. The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716; Bankers' Mut. Casualty Co. v. Minneapolis, St. P. & S. S. M. R. Co., 192 U.S. 371, 380, 24 S.Ct. 325, 48 L.Ed. 484; Excelsior Wooden Pipe Company v. Pacific Bridge Co., 185 U.S. 282, 287, 288, 22 S.Ct. 681, 46 L.Ed. 910. And so if it

appears from well-settled decisions of the courts that the statute invoked can have no real bearing upon the matter in issue, it cannot be said to arise under a law of the United States. Corrigan v. Buckley; 271 U.S. 323, 329, 46 S.Ct. 521, 70 L.Ed. 969; Western Union Tel. Co. v. Ann Arbor R. Co., 178 U.S. 239, 20 S.Ct. 867, 44 L.Ed. 1052."

If the Wagner Act imposed a valid duty upon minority employees to refrain from interfering, either directly or indirectly, with a contract entered into between the employer and the representatives of the majority employees, in the sense that it was made enforceable by the courts, then it would necessarily follow that plaintiff has stated a cause of action arising under such statute; or if a construction of this act gave rise to substantial difference of opinion, as to the right of the court to protect such contracts, it might well be argued that plaintiff had stated a cause of action in his bill of complaint which gives rise to a substantial controversy under this act. But the court being clear that, under no construction or applicability of the National Labor Relations Act (Wagner-Connery Labor Relations Act) can it be reasonably urged that plaintiff is entitled in this court to the relief which he seeks, the court must conclude that the cause of action set forth in the bill is plainly without merit in attempting to state a cause of action under a federal statute.

In view of the court's views as to the failure of the plaintiff to state a cause of action of which this court has jurisdiction, it is not necessary for the court to pass upon the merits of defendants' objections to the jurisdiction by reason of plaintiff's alleged failure to comply with the Norris-La Guardia injunction act (29 U.S.C.A. §§ 101–115).

Therefore, in harmony with the views herein expressed, the special appearance of the defendants is sustained, and the motion to vacate and quash plaintiff's application and motion for temporary injunction is hereby granted. An exception is allowed to the plaintiff.