**BROTHERHOOD OF RAILROAD TRAINMEN v. TEXAS & P. RY. CO.**

No. 11663.

Circuit Court of Appeals, Fifth Circuit.

Feb. 5, 1947.

Rehearing Denied March 19, 1947.

Kemble K. Kennedy, of Baton Rouge, La., for appellants.

M. E. Clinton, H. Payne Breazeale, and Fred G. Benton, all of Baton Rouge, La., Frank H. Peterman, of Alexandria, La.,

Esmond Phelps, of New Orleans, La., Fred G. Hudson, Jr., of Monroe, La., and Thos. T. Railey, of St. Louis, Mo., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

This is another of those cases arising under the Railway Labor Act, of which Brotherhood v. T. & N. O.[1] was the first, where on appeal the primary question for decision is, does the suit present a justiciable controversy? The secondary one is, is the judgment right?

The matter comes up in this way. Grounding jurisdiction on diversity and on the Railway Labor Act of 1934,[2] plaintiffs-appellees sued the Brotherhood of Railroad Trainmen, Rapids Lodge No. 856 of the Brotherhood of Railroad Trainmen, and some thirty individual members of the Brotherhood and the Lodge. They alleged that the Brotherhood and the Lodge were demanding that plaintiffs negotiate with them a change[3] in the agreement for yard operations in the joint yards at Alexandria, negotiated and executed June 2, 1927,[4] and in force ever since without change, and threatening them with penalties if they refused, while the individual defendants were demanding that they refuse and threatening to sue them if they did not.[5] Motions to dismiss were filed by the Brotherhood and the Lodge and the individual defendants. Both of these motions were de-

---

[1] D.C., 24 F.2d 426; Affirmed 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034.

[2] 45 U.S.C.A. §§ 151–163.

[3] The change proposed was from an apportionment of 55-45 to one of 65-35, as between Missouri-Pacific and Texas & Pacific yardmen.

[4] This agreement covered assignment of engine and yard crews, hostler and hostler helpers, pilots and switchtenders at the Missouri-Pacific and Texas & Pacific Consolidated Terminal, Alexandria, La. It provided that employes covered by the agreement will maintain their identity and retain their seniority with their respective railroads and will be paid the rates of pay and be governed by the working rules of the respective schedules of the Missouri-Pacific Railroad. In effect it divided the work between Missouri-Pacific and Texas & Pacific men on the basis of 55—Missouri-Pacific, and 45—Texas & Pacific. It was signed by the representatives of three brotherhoods, the Brotherhood of Locomotive Engineers, Brotherhood of Firemen & Engineers, Brotherhood of Railway Trainmen, and by the two railway companies.

[5] As plaintiffs' pleadings set it out, this was the controversy requiring declaration:

"1. The Brotherhood of Railroad Trainmen asserts that it is the bargaining agency for all yardmen employed by plaintiffs at Alexandria; that the Brotherhood has the power to bind all of those employes, including the individual defendants herein; and that, notwithstanding the objections of said defendants, plaintiffs are required by the Railway Labor Act to amend and interpret said contract of June 2, 1927, as desired by the Brotherhood. Plaintiffs admit that the Brotherhood of Railroad Trainmen is the bargaining agency for all yardmen employed by plaintiffs at Alexandria but they deny that the Railway Labor Act required them, or either of them, to amend and interpret said contract as desired by the Brotherhood while the validity of the Brotherhood's action is being challenged by employes who would be adversely affected by such amendment and interpretation and when such employes have announced their intention to sue one of plaintiffs for damages should such amendment and interpretation be made."

The prayer was that it be declared: (1) That plaintiffs are not required to amend or interpret the contract as desired by the Brotherhood; (2) that they are not required to confer, negotiate and bargain for an amendment or interpretation of the contract while the validity of the actions of the Brotherhood and the authority of its agents or representatives are being challenged; (3) that the brotherhood and no other person shall have any claim or demand against them for their refusal to amend or interpret the contract as decided while the validity of the Brotherhood's actions are being challenged; and (4) in the alternative, if the court should hold that plaintiffs are required by law to amend or interpret the contract as decided or that they are obligated to confer, negotiate or bargain with a view to amend or interpret the contract while the validity of the Brotherhood's actions are in question, the court declare that plaintiffs will not thereby become liable for any injury or damage which any of them may sustain by reason of amendment, interpretation, conference or bargaining.

nied, and answers were filed by the Brotherhood and the Lodge[6] and the individual defendants.[7]

The case coming on for trial, plaintiffs proved, as they had alleged, the execution of the contract of June 2, 1927, the request to change it, the suit brought by the individual defendants against them and the Brotherhood in the State court, the demand of the individual defendants that plaintiffs refrain from negotiating with the Brotherhood, and their threats to sue plaintiff if they did.

The individual defendants offered a great deal of documentary evidence pertaining to the controversy inside the Brotherhood over the change in the agreement, beginning about 1938, and continuing thereafter. This included the decision by the executives of the three brotherhoods originally signing the contract that it was intended to be a permanent apportionment and not to be changed, the appeal to the Board of Appeals, the reversal by the Board of the decision of the executives, the efforts of defendants to appeal to the Board of Directors and the Grand Lodge, and the ruling of the President that the decision was final and not appealable. On the contentions they made that the Board of Appeals was without authority to review the matters at issue, they offered the Constitution and Rul-

ings of the Order, and a mass of documents and correspondence. In addition, they offered oral evidence, including that of two of the defendants that the change proposed would injuriously affect the seniority of Texas and Pacific employees, causing some of them to lose both pay and jobs. The Brotherhood and the Lodge offered the Constitution and Rulings and the printed report of the Board of Appeals decision dated October, 1943.

The district judge devoted his inquiry to, and turned his decision on, the question whether the decision of the Board of Appeals was, as contended by the individual defendants, illegal and void. He decided: that it was: that the Brotherhood was without authority to negotiate for a change in the agreement; "that the plaintiffs are entitled to a declaratory judgment herein; and that the individual trainmen employees are entitled to a decree, maintaining in effect the contract of June 2, 1927." He gave judgment accordingly,[8] and the Brotherhood and the Lodge have appealed, specifying six errors. The first two, dealing with the question, does the plaintiff's suit present a justiciable controversy?, attack as erroneous the action of the district judge in denying the motion to dismiss. The last four, dealing with the question, is the judgment on the merits.

---

[6] The answer of the Brotherhood and the Lodge admitted that there was a dispute between them and some of their members, as alleged, but denied that the dispute had any just basis in law or in fact. Pointing out that the Railway Labor Board compels plaintiffs to bargain with the accredited representatives of the employees, and that they admit that it is such an accredited representative, these defendants insist that the existence of the dispute with some of their members furnishes no justiciable controversy between them and plaintiffs, and no basis for a declaration.

[7] Their answers contended: (1) That the 1927 agreement was not subject to change; (2) that this had been decided by the proper authorities of the Brotherhood under the constitution and laws of the organization; (3) that the decision of the Board of Appeals on which the Brotherhood predicated its proposal to change the contract was null and void, because, under the constitution it was without jurisdiction, and that, though the

Brotherhood was normally their accredited representative, it was in respect of the change demanded, a change which would be injurious to defendants, not their representative and without authority to bargain for them.

[8] The judgment declared: (1) That neither of the plaintiffs is required, as matter of law, either to amend or interpret the contract as requested by the Brotherhood; (2) that the action taken by the Brotherhood to amend or interpret the contract is contrary to and in violation of its constitution and by-laws, and is null and void; (3) that "under the existing circumstances", neither of the plaintiffs is required by law to confer, negotiate or bargain with the Brotherhood concerning its desire to amend or interpret the contract; (4) that the Brotherhood shall not have any claim or cause of action, "under the existing circumstances", against the plaintiffs for their failure to amend or interpret the contract or to confer, negotiate or treat with respect to it.

right?, attack the declaration as completely erroneous.

In support of its first two assignments, that the issues presented are not justiciable, appellants, agreeing with the plaintiffs that this controversy arises under the Railway Labor Act, insist that it must be settled under and in accordance with its provisions. They plant themselves firmly on the Act as it has been construed in General Committee of Adjustment of Brotherhood of Locomotive Engineers v. M.-K.-T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76; Switchmen's Union v. National Mediation, 320 U. S. 297, 64 S.Ct. 95, 88 L.Ed. 61; Brotherhood of Railway Trainmen, Enterprise Lodge, No. 27 v. Toledo, P. & W. R. R., 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534, 150 A.L.R. 810, and on our decision in Bradley Lumber Co. v. N.L.R.B., 5 Cir., 84 F.2d 97, 100,[9] where the action arising under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., was for a declaratory judgment.

On their second group of errors, that the court erred in declaring that the Board of Appeals was without jurisdiction to act, and, therefore, the Brotherhood was without authority to negotiate a change in the agreement, they insist that the matters dealt with in this declaration concern merely questions of policy, disputes between members, discipline and government of the Association, internal matters which do not warrant the interference of the courts. In support they cite many cases. They insist, too, that Section 15(b) of the Constitution specifically vests appellate jurisdiction in the Board of Appeals and makes its decision a final adjudication of any and all rights on questions involved in the appeal. Finally, they urge upon our attention the provisions of Section 9 of the Constitution: that the president shall interpret all laws pertaining to the Brotherhood and shall decide all controversies and appeals presented to him by subordinate lodges or members thereof; that such decisions shall be final unless reversed by the Board of Directors or Board of Appeals; and that when such decisions have been rendered it shall be the duty of the president to use all the authority and power vested in him to have the decisions placed in effect. Pointing to the record which shows, that the president directed that the appeal be taken to the Board of Appeals, and that he has determined, (1) that the case was properly appealed there, and (2) that no appeal lay from its finding, they insist that on the merits the judgment was completely wrong.

The carrier appellees, insisting that they have a real controversy; that there exists no administrative remedy of which they can avail; that Congress has not conferred upon the National Railroad Adjustment Board or upon the National Mediation Board, power and authority to decide the questions presented; and that the remedy of declaratory judgment is available to them; place their reliance on Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; and Elgin v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886. As to so much of the judgment as declared that "under the existing circumstances neither of plaintiffs (railroad appellees) is required by law to confer, negotiate, bargain or treat with the Brotherhood of Railroad Trainmen, its officers, agents or representatives, concerning its, or their, desire to amend or interpret said contract of June 2, 1927," they insist that the judgment was right, since it was predicated on a finding that the Brotherhood was not authorized to interpret and amend the contract of June 2, 1927.

---

[9] In that case we said:

"It is urged that the bill ought to be retained because of its prayer for a declaratory decree concerning the matter of the Board's jurisdiction over appellants. We do not think so. The new power to make a declaratory decree does not authorize a court of equity by declaration to stop or interfere with administrative proceedings at a point where it would not under settled principles, have interfered with or stopped them under its power to enjoin. The declaratory decree is a useful form of remedy, but the statutory provision for it (Declaratory Judgment Act, 28 U.S.C.A. § 400) does not enlarge the scope of equity jurisdiction to permit its application to controversies which have not yet reached the judicial stage. See Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145.

The individual employee appellees, as to the correctness of the order denying the motion to dismiss, make common cause with the railroad appellees. On the merits, they urge: that the judgment was right: that the effect of a change in the contract would be to affect adversely their seniority rights; that the seniority rights of laboring men are fundamental, constitutional rights, secured and protected by the Fifth Amendment; and that the court having determined that the Brotherhood was not authorized to negotiate for them, the declaratory judgment was properly granted.

We think it may not be doubted: that the complaint presented no justiciable controversy; that it was fundamental error not to grant the motion to dismiss; and that the judgment must be reversed and the cause remanded with directions to dismiss the suit. We, therefore, do not reach the second question, whether the judgment was right on the merits.

In view of the extended discussion of the Act in the cited cases, the reasons which compel our conclusion that the suit should have been dismissed may be stated in the briefest compass. The cases relied on by appellants state the general rule. Those cited by the carrier appellees and the recent case of Order of Railway Conductors of America v. Swan, 67 S.Ct. 405, state narrow exceptions to it. That this case comes squarely under the general rule and not under any of the exceptions, the briefest consideration of the Steele, Tunstall, Burley and Swan cases will show. In the Steele and Tunstall cases, the court fully recognized the broad scope and binding force of the general rule as declared in the Switchmen's union and the General Committee cases. In sustaining the right of Steele and of Tunstall to judicial relief, it took the greatest pains to point out that it sustained that right because, with the Union acting adversely on racial grounds to the very persons they were supposed to represent, the constitutional right of the plaintiffs not to be so discriminated against would be sacrificed or obliterated if it were without the remedy which courts can give for breach of such duty or obligation. Set out in the margin [10] are quotations from Steele's case which make perfectly clear the difference between that case and a case like the one at bar. The Burley case, dealt not with the authority of the Union to negotiate for

[10] "We hold that the language of the Act to which we have referred, read in the light of the purposes of the Act, expresses the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them.

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit. * * * Without attempting to mark the allowable limits of differences in the terms of contracts based on differences of conditions to which they apply, it is enough for present purposes to say that the statutory power to represent a craft and to make contracts as to wages, hours and working conditions does not include the authority to make among members of the craft discriminations not based on such relevant differences. Here the discriminations based on race alone are obviously irrelevant and invidious. Congress plainly did not undertake to authorize the bargaining representative to make such discriminations. Cf. Yick Wo v. Hopkins 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Yu Cong Eng v. Trinidad, 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed. 1059; State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559.

"The representative which thus discriminates may be enjoined from so doing, and its members may be enjoined from taking the benefit of such discriminatory action. No more is the Railroad bound by or entitled to take the benefit of a contract which the bargaining representative is prohibited by the statute from making." Steele v. Louisville & N. R. Co., 323 U.S. 192, 202, 65 S.Ct. 226, 232, 89 L.Ed. 173.

the making of a contract for the future, but with an attempted binding settlement by it of claims which had become vested in the past. It presented an entirely different situation from that here. A few quotations from the opinion in that case will show that this is so.[11] Swan's case [67 S.Ct. 407] dealt "with a jurisdictional frustration on an administrative level, making impossible the issuance of administrative orders which Congress explicitly has opened to review by the courts. * * * A declaratory judgment action is therefore appropriate to remove such an administrative stagnation."

A consideration of the pleadings and the evidence in the light of the controlling authorities makes it perfectly clear that no justiciable controversy between the railroads and the appealing defendants is alleged or proven. Plaintiffs do not deny, indeed they admit that the Brotherhood is the accredited representative of the employees. They do not allege any fact which shows that they are justiciably concerned in the internal dispute between the members and the Brotherhood. The statute compels the carrier plaintiffs to negotiate collective agreements with accredited representatives. The Brotherhood is the accredited representative. There is nothing here to adjudicate. The controversy which the carriers assert has been thrust upon them by the claims of the individual defendants is, as between the carriers and the Brotherhood non-existent. The carriers are under a statutory duty to negotiate with the Brotherhood. Neither negotiation nor an agreement with them therefore can make the carriers liable. If, the negotiation completed, any of the members have a just ground of complaint that the collective agreement is not binding on them for want of authority of the bargaining agent, it will not be binding on them or on the carriers, and they can, as Steele and Tunstall did, obtain relief from it. For, as was said in Steele's case:

"The representative which thus discriminates may be enjoined from so doing, and its members may be enjoined from taking the benefit of such discriminatory action.

---

[11] At page 728 of 325 U.S., 65 S.Ct. 1292, the court said:

"The statute itself vests exclusive authority to negotiate and to conclude agreements concerning major disputes in the duly selected collective agent. * * * Since the entire statutory procedure for settling major disputes is aimed only at securing agreement and not decision, unless the parties agree to arbitration, this exclusive authority includes representation of the employees not only in the stage of conference, but also in the later ones of mediation, arbitration and conciliation.

"Whether or not the agent's exclusive power extends also to the settlement of grievances, in conference or in proceedings before the Board, presents more difficult questions. * * * *"

At pages 739, 740 of 325 U.S., 65 S.Ct. 1297, the court went on to say:

"Petitioner's contrary view, as has been indicated, regards the settlement of grievances as part of the collective bargaining power, indistinguishable from the making of collective agreements. The assumption ignores the major difference which the Act has drawn between those functions, both in defining them and in the modes provided for settlement.

"To settle for the future alone, without reference to or effect upon the past, is in fact to bargain collectively, that is, to make a collective agreement. That authority is conferred independently of the power to deal with grievances, as part of the power to contract 'concerning rates of pay, rules, or working conditions.' It includes the power to make a new agreement settling for the future a dispute concerning the coverage or meaning of a pre-existing collective agreement. For the collective bargaining power is not exhausted by being once exercised; it covers changing the terms of an existing agreement as well as making one in the first place.

"But it does not cover changing them with retroactive effects upon accrued rights or claims. For it is precisely the difference between making settlements effective only for the future and making them effective retroactively to conclude rights claimed as having already accrued which marks the statutory boundary between collective bargaining and the settlement of grievances. * * *

"The Brotherhood had power, therefore, as collective agent to make an agreement with the carrier, effective for the future only, to settle the question of starting time, and that power was derived from the Act itself. In dealing within its scope, the carrier was not required to look further than the Act's provisions to ascertain the union's authority". (Emphasis supplied)

No more is the Railroad bound by or entitled to take the benefit of a contract which the bargaining representative is prohibited by the statute from making".

If, on the other hand, they have no such ground of complaint, the agreement will be binding on them. In either event, plaintiffs-carriers will be protected. In neither event will they have anything to fear.

For the failure of the complaint to state a justiciable cause for declaratory judgment, the motion to dismiss should have been sustained. Because it was not, the judgment is reversed and the cause is remanded with directions to dismiss the complaint.