**HAMPTON et al. v. THOMPSON et al.**

No. 12485.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1948.

Rehearing Denied Jan. 17, 1949.

536

Francis S. K. Whittaker, of Houston, Tex., Oliver W. Johnson, of San Antonio, Tex., and Charles H. Houston, of Washington, D. C., for appellant.

Josh H. Groce, Herbert Oliver and John R. Peace, all of San Antonio, Tex., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants, plaintiffs below, are brakemen on the Kingsville Division of the St. Louis, Brownsville & Mexico Railroad Company, hereafter called St. L. B. & M., and members of the Colored Trainmen of America. Suing for themselves and all other brakemen members of their union, they brought this action to enjoin the enforcement of an award, No. 11566 [1] of the First Division of the National Railroad Adjustment Board against San Antonio, Uvalde, and Gulf Railroad Company, hereafter called S. A. U. & G. and against Spangler Lodge 52 and Davy Crockett Lodge 369, subordinate lodges of the Brotherhood of Railroad Trainmen, hereafter called B. R. T. By amendment plaintiffs made Guy A. Thompson, Trustee of the S. A. U. & G. Railroad Company and of the St. L. B. & M. Railroad Company, defendant in lieu of S. A. U. & G. Railroad Company, which was dismissed out of the case.

Defendant contesting the jurisdiction and answering subject thereto, the district judge, on April 19, 1948, of the opinion that he was without jurisdiction, nevertheless stayed the proceedings in the cause "until plaintiffs had been afforded a reasonable opportunity to present their alleged grievances to the National Railroad Adjustment Board for its interpretation and decision." Thereafter, on the 21st day of June, 1948, the court filed its findings of fact and conclusions of law,[2] the plaintiffs

---

[1] This award was made not in a dispute between plaintiffs and their union and their employer, St. L. B. & M. but in a dispute between the B. R. T. and its employer, S. A. U. & G. This dispute arose over the passenger miles accumulated because of the fact that instead of having B. R. T. men operate passenger trains over the 17 miles of S. A. U. & G. rails between Odem and Corpus Christi, S. A. U. & G. had since June, 1937, permitted St. L. B. & M. to operate the trains with its employees, members of the Colored Trainmen of America.

The First Division found that S. A. U. & G. trainmen were due this accumulated mileage, and that "the San Antonio, Uvalde & Gulf brakemen should be allowed to run off the mileage due them from June 20, 1937, and the interested parties should meet and agree on the details necessary to continue to allow the run-off to be made in a practicable and reasonable manner."

[2] As material here, these are:

"Findings of Fact:

"(1) Plaintiffs herein are members of the Colored Trainmen of America, a labor organization, and are employed by Guy A. Thompson, Trustee in Bankruptcy of The St. L. B. & M. Railroad.

"(2) Defendants, the Lodges, are affiliates of the B. R. T., and employed by Thompson, Trustee for S. A. U. & G.

"(3) The St. L. B. & M. and S. A. U. & G., although separate corporations, have since 1933 been in bankruptcy under the jurisdiction of the Federal Court. Each line of railroad is a part of the Missouri Pacific System, operated under a common management, and the same individual is the negotiating agent with employees of each road for the Trustee of such road.

"(4) Prior to 1926, S. A. U. & G. operated a railroad, part of which extended from San Antonio, Texas, to Corpus Christi, Texas, and the St. L. B. & M. operated a train from Houston, Texas to Brownsville, Texas. St. L. B. & M. has not, and never has had, any directly owned outlet into Corpus Christi, but crosses S. A. U. & G. trackage, at Odem, 18 miles away. At the same time, St. L. B. & M. possessed trackage rights over the lines of the Texas-Mexico Railway at and between Corpus Christi and Robstown. (See Thompson, Trustee v. Texas, Mexico Railway Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132.) After the Missouri Pacific System acquired the S. A. U. & G. and incorporated it into the System, some

in open court announced that they declined to, and would not, present their alleged grievances to the National Railroad Adjustment Board for its interpretation and decision, for the reasons set forth in the court's findings of fact, and "it appearing to the court that the defendants would not present their grievances to the National Railroad Adjustment Board for its interpretation and decision even though afforded a reasonable opportunity to do so", the cause was dismissed.

In Brotherhood of Railroad Trainmen v. Texas & P. Railroad Co., 5 Cir., 159 F.2d

---

of the passenger trains (or the equipment included in them) of the St. L. B. & M., operating between Houston and Brownsville, began to operate through Corpus Christi, using both the S. A. U. & G. trackage between Odem and Corpus Christi, and Texas-Mexico trackage between Robstown and Corpus Christi, entering Corpus Christi by one route and leaving by the other. This was done under an operating arrangement satisfactory to each of the companies involved.

"(5) When said operating arrangement was affected, employees working on S. A. U. & G. requested an arrangement whereby they would be compensated for the mileage being lost to them by reason of St. L. B. & M. crew members running over S. A. U. & G. trackage. In 1932, an agreement was reached, under which two S. A. U. & G. brakemen were given work in the Corpus Christi yards to offset or recapture the mileage being run off on S. A. U. & G. trackage by St. L. B. & M. crew members.

"(6) Such type of agreement (equalization of mileage) is not unusual and is customary in the railroad industry, and was not protested but acquiesced in by St. L. B. & M. crew members. It lasted for five years or until 1937, when it was terminated. Upon its termination, no provision or arrangement was made for recapture of this mileage by S. A. U. & G. employees.

"(7) Upon the termination of said agreement, S. A. U. & G. employees sought a new arrangement to compensate them for the mileage being run off on S. A. U. & G. trackage by St. L. B. & M. crew members. Unable to effect such an agreement by negotiation, the matter was presented to the First Division of the National Railroad Adjustment Board for decision in a cause filed by the B. R. T. against S. A. U. & G., Docket No. 12584; in which the Colored Trainmen of America attempted to intervene. The First Division denied them leave to intervene. This denial was not on the basis of race or color.

"(8) Thereafter, on the 2nd day of June, 1947, the First Division of the National Railroad Adjustment Board entered the award, the enforcement of which this suit seeks to enjoin.

"After the award was made, the negotiating agent for both the St. L. B. & M. Railway and the S. A. U. & G. notified the plaintiffs that he recognized the award. This recognition would result in the temporary displacement of one or more Negro brakemen on the St. L. B. & M. from their runs and temporarily replacing them with S. A. U. & G. brakemen until the award has been complied with. Plaintiffs then brought this suit.

"(9) It is undisputed that plaintiffs have not presented their claim to any Division of the Railroad Adjustment Board for its interpretation and determination.

"(10) The Court finds that the First Division of the National Railroad Adjustment Board is composed of five representatives of carriers and five representatives of labor organizations 'national in scope'. The five labor representatives on the First Division of the National Railroad Adjustment Board were selected by twenty-two labor organizations national in scope, including the Brotherhood of Railroad Trainmen, Brotherhood of Locomotive Firemen & Enginemen, Brotherhood of Locomotive Engineers, Order of Railway Conductors, and Switchmen's Union of North America. At all times material herein and now, said five named organizations have one member each as the labor representative on said First Division. The Colored Trainmen of America (which has membership only in Texas and Louisiana) has never attempted to qualify as a labor union national in scope for the purpose of participating in the selection of labor representatives on the National Railroad Adjustment Board. The Brotherhood of Railroad Trainmen, Brotherhood of Locomotive Firemen & Enginemen, Brotherhood of Locomotive Engineers, Order of Railway Conductors and Switchmen's Union of North America are the only labor unions with jurisdiction over train and yard service employees of carriers which have qualified as labor unions national in scope for the purpose of participating in the selection of labor representatives on the National Railroad Adjustment Board. Since the original rendition of the Court's opinion in this matter, plaintiffs have offered to produce evidence to prove:

822, certiorari denied 332 U.S. 760, 68 S.Ct. 62, we have had recent occasion to review the decisions of the Supreme Court on the nature and limits of the jurisdiction of the federal courts in controversies arising under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and the prerequisites to its exercise. No later decision of this or any other court, impeaching or casting doubt upon the conclusions we reached there, has been called to our attention. We have found none. That case and those of Order of Railroad Telegraphers v. New Orleans, T. & M. Ry. Co., 8 Cir., 156 F.2d 1, certiorari denied 329 U.S. 758, 67 S.Ct. 112, 91 L.Ed. 654 and Missouri-Kansas-Texas R. Co. v. Randolph, 8 Cir., 164 F.2d 4, certiorari denied 334 U.S. 818, 68 S.Ct. 1082, are precise authority in support of the trial court's action, unless the fact, that the plaintiffs in this suit are Negroes and plaintiffs in those were not, requires a different rule.

What and all that is for decision here, then, is whether the fact, that appellants are Negroes and members of an all Negro railway labor union, entitles them, the Railway Labor Act notwithstanding, to by-pass the National Railroad Adjustment Board and sue direct in the federal courts upon grievances with their employer.

■ The district judge thought that it did not. We agree.

■ Constitutional amendments and federal statutes, dealing with race or color, were written, they have been interpreted and applied, not to discriminate in favor of Negroes, but to prevent discrimination against them, not to make, but to prevent, a different rule for Negroes than for whites. On page 2 of their reply brief, appellants say: "It is not necessary to prove that the individual members of the First Division have prejudice against Negroes or that the particular award was the produce of prejudice. All appellants have to prove is that the structure of the First Division is fatally tainted with race discrimination." When this statement is read in the light of the undisputed facts, indeed the facts admitted and found on this record, it is at once apparent that appellants are using an ancient device, assuming a situation favorable to themselves, in order to get a favorable judgment. In short, begging the question, they put a straw man up to knock him down. The dispute here involves no racial element whatever. The fact that the brakemen in one group are Negroes, in the other whites, has no bearing on the demands of the B. R. T. lodges that they be allowed to run off accumulated

---

"(1) that the above five organizations do not accept Negroes as members solely because of race;

"(2) that the above five organizations have persistently (on properties other than the properties of St. L. B. & M. and S. A. U. & G.) discriminated against members of the Negro race, and have opposed their use in train, engine and yard service;

and for these reasons plaintiffs decline to submit their grievance to the First Division of the National Railroad Adjustment Board. The tender by plaintiffs of further proof does not offer to prove and cannot prove:

"(1) that the First Division of the National Railroad Adjustment Board, as individuals or as a board, are prejudiced against members of the Negro race, or that they have discriminated against in the past or would discriminate against Negroes or employees of the St. L. B. & M. Ry. or the Colored Trainmen of America on account of race or color in the event a claim was presented to said Board;

"(2) that the claim for recapture of

mileage by the Brotherhood of Railroad Trainmen before the Railroad Adjustment Board, in the instant case, was caused by prejudice or discrimination against plaintiffs or the Colored Trainmen of America on account of race or color;

"(3) that the award of the Railroad Adjustment Board above set forth was rendered on account of racial prejudice or by reason of discrimination against the Colored Trainmen of America and plaintiffs.

"Conclusions of Law:

"1. The facts covered by the proffer of proof, as set forth in paragraph 10, if true, would be immaterial at this point and insufficient to justify plaintiffs in refusing to present their alleged grievance with the carrier for whom they worked to the First Division of the National Railroad Adjustment Board for its consideration.

"2. It is without jurisdiction to hear and determine the cause of action alleged in plaintiffs' pleadings and, therefore, the relief prayed for by plaintiffs should be, in all things denied.

mileage, none on the insistence of the colored railway trainmen that none of them should be displaced.

The doctrine, that in circumstances of this kind a person is entitled to a special tribunal or special treatment because of the color of his skin, has never prevailed in this country, in or out of the courts. If the position taken here should be sustained, the United States and every state must redraft all its laws, remake all its appointments. To say, as appellants in effect say here, that whenever a Negro, not as a Negro but as a person, is concerned in a controversy, he may call in question not the actual prejudice against him of those who are to hear it, but the fact that the hearers have been selected from white organizations which do not admit Negroes to membership, is to introduce a new and strange doctrine. It would be impossible to conform to it. Contrary to the principle of democracy in America, the spirit of its laws, it would be as stupid as it would be wicked to conform to it if conformity were possible. The judgment is affirmed.