**AKERS MOTOR LINES, Inc., et al. v. MALONE FREIGHT LINES, Inc. (INTERSTATE COMMERCE COMMISSION, Intervenor).**

No. 6391.

United States District Court
N. D. Alabama. S. D.

Feb. 10, 1950.

Graham, Bibb, Wingo & Foster, Birmingham, Ala., Edgar Watkins, Reuben G. Crimm and Allan Watkins, Atlanta, Ga., for plaintiffs.

John D. Hill, U. S. Atty., Birmingham, Ala., and Leo H. Pou and Isaac K. Hay, Atlanta, Ga., for intervenor, I. C. C.

W. H. Brantley, Jr., Birmingham, Ala., Messrs. Wrape & Hernly, Memphis, Tenn., for defendant.

LYNNE, District Judge.

Invoking the jurisdiction of this Court, plaintiffs rely upon the diversity of citizenship and amount in controversy provisions of Section 1332, Title 28 U.S.C.A.

Contending that defendant, a motor carrier operating under a certificate of public convenience and necessity issued by the Interstate Commerce Commission, as are the several plaintiffs, is wrongfully interfering with the business of each plaintiff by its constant practice of perverting, distorting, abusing or misinterpreting the authority conferred upon it under its certificate in making an unsanctioned double use of its irregular route radial authority, thereby invading segments of transportation territory allotted to plaintiffs and depriving plaintiffs of freight which they once transported and are now authorized to transport, plaintiffs aver the imminence of irreparable loss, damage and injury and pray for an injunction.

Moving to dismiss the action, defendant challenges the jurisdiction of the Court, insisting that the specification of remedies in Part II of the Interstate Commerce Act,[1] implemented by pertinent jurisdictional and procedural provisions of the recently enacted Judicial Code,[2] excludes the private remedy here sought.[3] Receding somewhat from this position in response to questions raised by the Court on oral argument, defendant, in briefs, invokes the application of the so-called primary jurisdiction doctrine.

This, it is said, is a case of novel impression. Too frequently dignity is sought to be imparted to an opinion by ascribing novelty to the application rather than to the enunciation of a principle—not that the former is fraught with less difficulty than the latter. Indeed, it were sometime easier to beat a path than to follow blindly another's course.

True, no case has been called to my attention, I have found none, where the court has dealt with an action by one motor carrier to obtain a judicial construction of the certificate under which a competitor purports to operate, without first having sought relief from the Interstate Commerce Commission, to whom, it is insisted, Congress has committed plenary power to deal with complaints concerning unfair or destructive practices by motor carriers subject to the Motor Carrier Act, 1935, now codified as Part II of the Interstate Commerce Act.

As to the broad principle that administrative remedies ought to be exhausted before applying to a court for extraordinary relief, there is, there can be at this late date, no dispute.[4] Conceding the availability of appropriate administrative remedies, it remains to be determined upon the allegations of the complaint whether the controversy disclosed thereby involves only questions of law, soluble in the first instance by the courts, as plaintiffs insist, or involves issues essentially of fact which call for the exercise of administrative discretion, as defendant contends.[5]

1. Title 49 U.S.C.A. § 301 et seq.

2. Title 28 U.S.C.A. §§ 1336, 2321, 2322, 2323, 2324, 2325 and 2284.

3. Cf. Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61.

4. "No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, at page 50, 58 S.Ct. 459, at page 463, 82 L.Ed. 638, citing many cases relating to relief by injunction.

See also: Cook et al. v. Davis, 5 Cir., 1949, 178 F.2d 595.

5. Following an exhaustive analysis of the cases cited under Footnote 1 of his opinion, Justice Brandeis, writing for a unanimous court in Great Northern Ry. Co. v. Merchants' Elev. Co., 259 U.S. 285, 295, 42 S.Ct. 477, 66 L.Ed. 943, a case arising under Part I of the Interstate Commerce Act, suggests, as a general rule, that questions essentially of fact and those involving the exercise of administrative discretion, should first be submit-

Adverting to the provisions of Part II of the Interstate Commerce Act, it becomes at once apparent that within the scheme ordained by the Congress for "developing, coordinating, and preserving a national transportation system by * * * highway" there is provided administrative machinery, including a commission composed of experts in the technology of the transportation industry, entirely adequate to deal with disputes involving competing carriers. Specifically, the provisions of the Act relating to the jurisdiction of the Interstate Commerce Commission to regulate motor carriers,[6] its comprehensive power,[7] its authority to investigate and to act upon complaints by any person or organization or upon its own initiative without complaint,[8] together with its provisions as to the necessity for a certificate of convenience and necessity,[9] as to the authority of the Commission to amend, revoke or suspend such certificate,[10] and as to the right of the Commission to resort to the District Courts to enforce obedience to its orders, rules and regulations,[11] demonstrate alike

---

ted to the Commission, and, as an exception, that questions of law are for the courts in the first instance. This principle, as a rule and exception, was relied upon by the Court, per Sutherland, J., in U. S. Nav. Co. v. Cunard S. S. Co., 284 U.S. 474, 481, 52 S.Ct. 247, 76 L.Ed. 408.

6. Title 49 U.S.C.A. § 302(a): "The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission."

7. Title 49 U.S.C.A. § 304(a) (6): "It shall be the duty of the Commission—To administer, execute, and enforce all provisions of this part, to make all necessary orders in connection therewith, and to prescribe rules, regulations, and procedure for such administration."

8. Title 49 U.S.C.A. § 304(c): "Upon complaint in writing to the Commission by any person, State board, organization, or body politic, or upon its own initiative without complaint, the Commission may investigate whether any motor carrier or broker has failed to comply with any provisions of this chapter, or with any requirement established pursuant thereto. If the Commission, after notice and hearing, finds upon any such investigation that the motor carrier or broker has failed to comply with any such provision or requirement, the Commission shall issue an appropriate order to compel the carrier or broker to comply therewith. Whenever the Commission is of opinion that any complaint does not state reasonable grounds for investigation and action on its part, it may dismiss such complaint."

9. Title 49 U.S.C.A. § 306(a): "* * * no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations * * *."

10. Title 49 U.S.C.A. § 312(a): "Certificates, permits, and licenses shall be effective from the date specified therein, and shall remain in effect until suspended or terminated as herein provided. Any such certificate, permit, or license may, upon application of the holder thereof, in the discretion of the Commission, be amended or revoked, in whole or in part, or may upon complaint, or on the Commission's own initiative, after notice and hearing, be suspended, changed, or revoked, in whole or in part, for willful failure to comply with any provision of this chapter, or with any lawful order, rule, or regulation of the Commission promulgated thereunder, or with any term, condition, or limitation of such certificate, permit, or license * * *."

11. Title 49 U.S.C.A. § 322(b): "If any motor carrier or broker operates in violation of any provision of this chapter (except as to the reasonableness of rates, fares, or charges and the discriminatory character thereof), or any rule, regulation, requirement, or order thereunder, or of any term or condition of any certificate or permit, the Commission or its duly authorized agent may apply to the district court of the United States for any district where such motor carrier or broker operates, for the enforcement of such provision of this chapter, or of such rule, regulation, requirement, order, term, or condition; and such court shall have jurisdiction to en-

the availability of an adequate administrative remedy to plaintiffs and the wisdom of the Congress in plainly indicating that the expertise of the Commission should be utilized in the screening of controversies in the highly technical field of transportation before invoking the more ponderous procedures of the court.[12]

Turning to the complaint, from a practical analysis of the controversy between the parties, as pictured by the plaintiffs, faint persuasion deepens to conviction, that questions of fact, involving the common transportation practices of defendant, misguided though it may be in construing

the certificate which authorizes its operations, must be decided before the mutual rights and obligations of the parties may be adjudicated.[13]

Having pointed to the existence of an adequate administrative remedy and having concluded that the controversy involves questions essentially of fact, the action to be taken is plainly indicated. "The principles making up the so-called primary jurisdiction doctrine are well settled. This is obviously a case for their application."[14]

An order dismissing the action will be presented and entered.

force obedience thereto by a writ of injunction or by other process, mandatory or otherwise, restraining such carrier or broker, his or its officers, agents, employees, and representatives from further violation of such provision of this chapter or of such rule, regulation, requirement, order, term, or condition and enjoining upon it or them obedience thereto."

12. Cf. Federal Trade Commission v. Claire Furnace Company, 274 U.S. 160, at page 174, 47 S.Ct. 553, at page 556, 71 L.Ed. 978, wherein, it was remarked: "In a case like this, the exercise of this discretion will greatly relieve the court and may save it much unnecessary labor and discussion. The purpose of Congress in this requirement is plain, and we do not think that the court below should have dispensed with such assistance."

13. The language of the court, per Douglas, J., in Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, at page 147, 66 S.Ct. 937, at page 945, 90 L.Ed. 1132, is peculiarly appropriate here: "But in a long line of cases beginning with Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, it has been held that where the reasonableness or legality of the practices of the parties was subject to the administrative authority of the Interstate Commerce Commission, the court should stay its hand until the Commission had passed on the matter."

Other cases, arising under Part I of the Interstate Commerce Act, which have applied the primary jurisdiction doctrine are collected under Footnote 22 to the opinion of the court in Rochester Tel. Corp. v. U. S., 307 U.S. 125, at page 139, 59 S.Ct. 754, 83 L.Ed. 1147.

For application of the doctrine:
(a) To cases arising under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., see, e. g., Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L. Ed. 61; Brotherhood of Railroad Trainmen v. Texas & P. Ry. Co., 5 Cir., 159 F.2d 822; Hampton et al. v. Thompson, et al., 5 Cir., 171 F.2d 535; U. S. ex rel. v. Missouri-Kansas-Texas R. Co., 5 Cir., 171 F.2d 961; General Committee, etc. v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76.

(b) To cases arising under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., see, e. g., Bradley Lumber Co. v. National Labor Relations Board, 5 Cir., 84 F.2d 97.

(c) To cases arising under the Federal Communications Act, 47 U.S.C.A. § 151 et seq., see, e. g., Rochester Tel. Corp. v. U. S., 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Red River Broadcasting Co. v. Federal Communications Commission, 69 App.D.C. 1, 98 F.2d 282; Federal Power Commission v. Arkansas Power & Light Co., 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261.

(d) To cases arising under the Bituminous Coal Act of 1937, 50 Stat. 72, see, e. g., Utah Fuel Co. v. National Bituminous Coal Commission, et al., 69 App. D.C. 333, 101 F.2d 426.

14. The language quoted is that of Justice Black, writing for a unanimous court in Armour & Co. v. Alton R. Co., 312 U.S. 195, 61 S.Ct. 498, 503, 85 L.Ed. 771, a case arising under Part I, Interstate Commerce Act.