Russell E. PETERSON et al., Appellants,

v.

BROTHERHOOD OF LOCOMOTIVE
FIREMEN AND ENGINEMEN
et al., Appellees.

No. 12623.

United States Court of Appeals
Seventh Circuit.

Nov. 23, 1959.

Richard H. Sproull, Philip E. Byron, Jr., Elkhart, Ind., for appellant.

S. J. Crumpacker, South Bend, Ind., Harold C. Heiss, Harold N. McLaughlin, Cleveland, Ohio, George N. Beamer, South Bend, Ind., Russell Day and Clarence E. Weisell, Cleveland, Ohio, of counsel, for appellees.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiffs Russell E. Peterson, William F. Barwiler, Herman Christensen, Frank Mayhousen, Mark T. Hout, and C. T. Jones, members of the two defendant Railroad Brotherhoods, brought this suit April 17, 1958, in the Elkhart Superior Court, Elkhart, Indiana, against defendants, Brotherhood of Locomotive Firemen and Enginemen, Robert E. Brown, H. E. Gilbert, S. C. Phillips, and Ray Scott, as officers and members of Brotherhood of Locomotive Firemen and Enginemen, and as such members representing all of the members of the Brotherhood of Locomotive Firemen and Enginemen; and Grand International Brotherhood of Locomotive Engineers, P. J. Ryan, Guy L. Brown, R. E. Davidson, and H. F. Hempy, as officers and members of Grand International Brotherhood of Locomotive Engineers, and as such members representing all of the members of the Grand International Brotherhood of Locomotive Engineers, as a class action for themselves and other employees of the New York Central Railroad in the Toledo West Seniority Division, to enjoin the international officers of the two Brotherhoods from

carrying into effect their determination affecting plaintiffs' seniority rights.

The New York Central operates yards for car classification, switching, and train make-up at Elkhart, Indiana; Toledo, Ohio; and Niles, Michigan.

The Elkhart and Toledo Yards are both in the Toledo West Seniority District, which includes the territory between Elkhart and Toledo, and which is part of the Division known as Lines West or Western District, embracing the territory between Chicago, Illinois and Buffalo, New York—via Elkhart and Toledo.

The Niles Yard is in the West Division Seniority District, which includes the territory between Niles and Chicago, Illinois, and which is part of the division known as Michigan Central or Northern District embracing the territory between Chicago and Buffalo—via Niles, Jackson and Detroit, Michigan; and Ontario, Canada. Each of the larger divisions include other seniority districts.

During the period from 1955 to 1958, the New York Central Railroad greatly improved the efficiency and capacity of the facilities at Elkhart. With increased capacity at Elkhart, the New York Central Railroad commenced what defendants consider to be, in substance, a new through freight route between Jackson and Elkhart by reconstruction and modernization of various branch lines not previously linked together as a single route for through trains between the two points, so as to divert, to the Main Line via Elkhart, trains formerly operating between Jackson and Chicago over the Michigan Central route via Niles.

The Michigan Central or Northern District employees, anticipating loss of jobs, demanded rights to operate trains in the Western District. Representatives of the Northern and Western District firemen and engineers were unable to arrive at any agreement. The Northern District representatives appealed to the international officers of their two Brotherhoods. The International President of the Brotherhood of Locomotive Firemen and Enginemen and the Grand Chief Engineer of the Brotherhood of Locomotive Engineers made a joint decision, April 11, 1958, which plaintiffs contend was made without authority under the Constitutions of the Brotherhoods.

A count, made by the Railroad, of freight trains operated over the two districts during the period from January 1955 through June 1957 showed about 48% of the total freight to have been over the Northern District and 52% over the Western District.

Accordingly, April 11, 1958, the defendant officers determined that the total jobs remaining on both routes should be shared between the Michigan Central Northern District and the Main Line Western District yard crews in the ratio of 48% to 52%.

In an *ex parte* hearing, April 17, 1958, the Elkhart Superior Court issued a temporary restraining order without notice enjoining defendants from asking the New York Central Railroad to honor the seniority rights of its employees other than plaintiffs in the Toledo West Seniority District Division, and set hearing on the complaint for temporary injunction for April 28, 1958. Prior to that date, defendants removed the action to the District Court, where plaintiffs' motion to remand was denied on July 18, 1958. The temporary restraining order remained in effect until October 15, 1958, when the District Court denied temporary injunction. Appeal No. 12561 regarding the denial of motion to remand and temporary injunction was dismissed when this appeal was taken from denial of permanent injunction on March 24, 1959.

Plaintiffs state the issues to be:

"(1) Whether the District Court has original jurisdiction of this case as a civil action or proceeding arising under an Act of Congress regulating commerce against restraints and monopolies, and

"(2) Do the provisions of the Brotherhoods' Constitutions empower the officials to make the determi-

nation affecting the seniority rights of the members possessing such rights in the Toledo West Seniority District? And, if not, do the executives of the Brotherhoods have inherent power to make such a determination?"

Plaintiffs argue that this action is a claim for relief under the statutory and common law of the State of Indiana and should have been remanded by the District Court to the State Court where it was originally filed and from which it was removed.

It is conceded by all parties that the question of federal jurisdiction must be determined solely from the allegations of the complaint itself without reference to the petition to remove.

Plaintiffs insist that nowhere in their Complaint do they charge that defendants' conduct is unlawful because it violates a law of the United States, but, on the contrary, defendants' conduct is characterized as unlawful only because it is not in accord with the provisions of the Constitutions of the Brotherhoods.

Defendants read significance in the words used in paragraph 12 of the Complaint which charges defendants with conduct which is "arbitrary, unlawful and in excess of the powers of said defendants."

In support of their position plaintiffs cite a number of cases in which federal courts were found to be lacking in jurisdiction. We have considered these cases with care.

Switchmen's Union of North America v. National Mediation Board, 1943, 320 U.S. 297, at page 301, 64 S.Ct. 95, 88 L.Ed. 61 held that the district court did not have original jurisdiction because Congress had given the Mediation Board the power to resolve controversies concerning the right of the majority of any craft or class of employees to determine who shall be its representative, and that review by the federal district courts of the Board's determination was not necessary to protect that right; Congress having decided upon the method for protection of the right which it created, the specification of the one remedy normally would preclude another remedy. The Supreme Court also (320 U.S. at page 300, 64 S. Ct. at page 97) distinguished the Switchmen's Union case from other cases where it was apparent that but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act, 45 U.S. C.A. § 151 et seq.

Both General Committee etc. v. Missouri-Kansas-Texas Railroad, 1943, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 and General Committee etc. v. Southern Pacific Co., 1943, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 concerned the right of the majority of a craft or class of employees to designate the craft or class representative. The Supreme Court in Missouri-Kansas said (320 U.S. at page 336, 64 S.Ct. at page 152) it seemed plain that when Congress came to the question of these jurisdictional disputes, it chose not to leave their solution to the courts and selected different machinery for their solution.

All three of these cases involved jurisdictional controversies between different unions. The Supreme Court held that they did not present justiciable issues under the Railway Labor Act, that the district courts were without power to resolve them because Congress had selected different machinery for their solution. Thus we are unable to agree with plaintiffs' assertion that a study of these three cases shows the district courts not to have original jurisdiction of the type of action before us.

Plaintiffs further cite cases from the fifth, seventh, fourth, and tenth circuits which they say support their view and one from the sixth circuit which they say illustrates a conflict on the basic issue here.

In Brotherhood of Railroad Trainmen v. Texas and P. Ry. Co., 5 Cir., 1947, 159 F.2d 822, the carrier sought declaratory

judgment that the Brotherhood was without authority to negotiate a change in the contract between the Brotherhood and the carrier and that individual trainmen defendants (who had threatened to sue the carrier if the carrier did not refuse request for change in the contract) were entitled to a decree maintaining the contract in effect. The Court of Appeals for the Fifth Circuit held that no justiciable controversy was shown between the carrier and the internal dispute between the trainmen members and the Brotherhood. The carrier was compelled by statute to negotiate with the accredited representative; the Brotherhood was conceded to be the accredited representative; there was nothing to adjudicate.

In distinguishing the case before it from the Steele and Tunstall cases (cited here by defendants [1]) the Fifth Circuit said (159 F.2d at page 826) that in those cases the union was acting adversely to the very persons it was supposed to represent and the constitutional right of the plaintiffs not to be so discriminated against would be sacrificed if they were without the remedy which the courts could give for breach of such duty.

Starke v. New York, Chicago and St. Louis R. Co., 7 Cir., 1950, 180 F.2d 569, concerned an individual employee who sued the railroad alone and not the collective bargaining agent, to enforce a seniority provision in a collective bargaining agreement made by that agent with the defendant railroad. This Court held (at page 573) that Congress having conferred on the National Railroad Adjustment Board the authority to hear and determine plaintiff's grievance, it was not to be implied, in the absence of express language, that Congress also intended to confer jurisdiction upon the courts.

Malone v. Gardner, 4 Cir., 1932, 62 F.2d 15, dealt with representative action brought by a locomotive engineer against two other locomotive engineers in their own right and as officers of a Brotherhood to restrain them from continuing a conspiracy to induce the railway company employer to breach the contract between the railway and the Brotherhood with respect to seniority rights. The Fourth Circuit affirmed the judgment of the District Court which had sustained a motion to dismiss on the ground (at page 17) that the bill presented for determination no question arising under the Constitution or laws of the United States of which the federal courts could take cognizance. The Court of Appeals based its decision (at page 20) on the rule that the federal courts have not been given jurisdiction to try all actions arising out of agreements between carriers and their employers.

In Oldland v. Gray, 10 Cir., 1950, 179 F.2d 408, plaintiffs brought action to establish their royalty interest in an oil and gas lease assignment of a permit to prospect for oil and gas on public lands and to impress a trust on the proceeds. On appeal, the Tenth Circuit held (at page 412) that federal law did not create the asserted cause of action, nor was it an essential element thereof in the sense that the action would be sustained if federal law were given one construction and defeated if given another.

Defendants cite the Sixth Circuit case, Mount v. Grand International, 1955, 226 F.2d 604, certiorari denied 1956, 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839, as clearly in point. Plaintiffs cite it as an example of conflict in authority which ought not to be followed. Of all the cases cited the Mount case is the most nearly like the case before us, the others, as indicated, having clearly distinguishing elements. Mount, a locomotive engineer in the employ of Gulf Mobile and Ohio Railroad Company, sought, in the federal district court, to enjoin the

---

[1]. Steele v. Louisville & Nashville R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L. Ed. 173; Tunstall v. Brotherhood of Locomotive F. & E., 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187.

Brotherhood from negotiating, with the railroad, a proposed amendment to the contract between the railroad and the Brotherhood with respect to seniority and allied matters. The complaint (as here) alleged that the proposed action was in defiance of the constitution and by-laws of the Brotherhood, and was "an unfair, arbitrary, unauthorized and unlawful act * * *." The complaint went further and (unlike here) alleged the conduct proposed to be a violation of Section 2 of the Railway Labor Act, 45 U.S.C.A. § 152. Although plaintiffs here do not charge violation of the Railway Labor Act, they do characterize the conduct of the defendants in terms otherwise similar to that set out in the Mount complaint.

The Sixth Circuit (at page 607) held that the Steele and Tunstall cases were not limited to racial discrimination alone, and concluded that if the Brotherhood were engaging in hostile discrimination against a portion of the membership of the craft without good faith representation of the entire membership, in making contracts with the carrier, the employees so discriminated against had a cause of action arising under a law regulating commerce, under which federal courts are given jurisdiction by 28 U.S.C.A. § 1337.

Plaintiffs see an inherent inconsistency between the Mount case and Teague v. Brotherhood of Locomotive Firemen, 6 Cir., 1942, 127 F.2d 53, where the same Court of Appeals saw no federal question in a suit by a railway fireman to set aside a collective bargaining agreement whereby white firemen were given preference over negro firemen in assignments, regardless of seniority. However, Teague antedated the Steele and Tunstall cases.

Plaintiffs in paragraph 10 of their Complaint allege that defendants will grant rights to other employees to claim and procure jobs to which plaintiffs are entitled, but plaintiffs assert that they are not questioning the fairness of the Brotherhoods' decision; that they characterize it as arbitrary and unlawful only because it is not authorized by the Constitutions of the Brotherhoods.

We are satisfied that had plaintiffs chosen to do so they might have asserted a cause of action under the Railway Labor Act. But we are left with the question of whether plaintiffs were obliged to do so or whether they might properly elect (as they did) to pursue other rights which they seek to assert in the state courts.

Whether, as defendants argue, plaintiffs have failed to plead a cause of action under the common law or statutes of the State of Indiana is not an issue before this Court.

No case has been cited to us, nor have we found any case, which holds that the Congressional intent, in adopting the Railway Labor Act, was to give federal courts exclusive jurisdiction in cases of this nature.

Close study of the Complaint originally filed herein indicates that the motion to remand should have been allowed.

Defendants argue that it is essential to the functioning of the collective bargaining machinery, set up by the Railway Labor Act, that the internal procedures of the labor organizations designated pursuant to that Act as exclusive bargaining representatives be uniform throughout the United States; that this desirable end will be thwarted if various state courts undertake separate, and possibly inconsistent and contradictory, interpretations of the internal laws of the Brotherhoods. The danger inherent in contradictory state court interpretation presents a problem for legislative determination by Congress rather than for judicial interpretation by the courts.

In the light of our decision on the jurisdictional question, we do not reach other questions raised in this appeal.

The judgment of the District Court is reversed and the cause is remanded with directions to grant the plaintiffs' motion to remand to the state court.

Reversed and remanded with directions.