**ORDER OF RAILROAD TELEGRAPHERS et al. v. NEW ORLEANS, TEXAS & MEXICO RY. CO. et al.**

No. 13225.

Circuit Court of Appeals, Eighth Circuit.

June 24, 1946.

Rehearing Denied Aug. 1, 1946.

Writ of Certiorari Denied Oct. 21, 1946.

See 67 S.Ct. 112.

R. Walston Chubb, of St. Louis, Mo. (Ralph E. Kennedy and Lewis, Rice, Tucker, Allen & Chubb, all of St. Louis, Mo., on the brief), for appellants.

Willard H. McEwen, of Toledo, Ohio (Clarence T. Case of St. Louis, Mo., Frank L. Mulholland, and Clarence M. Mulholland, both of Toledo, Ohio, and James L. Crawford, of Cincinnati, Ohio, Case, Voyles & Case., of St. Louis, Mo., and Mulholland, Robie & McEwen of Toledo, Ohio, on the brief), for appellees Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, and H. R. Lyons.

Before GARDNER and THOMAS, Circuit Judges, and DUNCAN, District Judge.

THOMAS, Circuit Judge.

This is an action in two counts for a declaratory judgment and for injunctive relief. The appeal is from a judgment dismissing both counts of the petition on the merits. The first count was dismissed on the ground that the court had no jurisdic-

tion to pass upon the controversy presented by the pleadings and the evidence, and the second count on the ground that the plaintiffs were not parties to the alleged erroneous proceedings referred to in said count, were not involved therein, and are, therefore, in no position to complain of the rulings of the court. The facts and contentions of the parties are set out in detail in the opinion of the trial court in 61 F.Supp. 869.

Jurisdiction of the federal court is invoked under § 24(8) of the Judicial Code, 28 U.S.C.A. § 41(8), because the petition alleges a violation of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and as to the second count of the petition under § 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1), because a violation of the due process clause of the Constitution is alleged.

The plaintiffs include the Order of Railroad Telegraphers, an unincorporated labor union, herein called the O.R.T., three of its officers and three of its individual members. The defendants are the New Orleans, Texas & Mexico Railway Company and twelve other railroad corporations known collectively as the Gulf Coast Lines, the International-Great Northern Railroad Company, Guy A. Thompson, Trustee for each of the defendant railroad corporations, the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, an unincorporated labor union, herein called the B.R.C., and H. R. Lyons, its Vice Grand President.

The plaintiffs bring this action in their own behalf and in behalf of and as representatives of all the members of the O.R.T. employed by the defendant railroad corporations and Thompson as Trustee, and in behalf of all others who may be similarly situated. Both the O.R.T. and the B.R.C. are accredited bargaining agents for their respective crafts and have collective bargaining contracts with the defendant railroad corporations and their Trustee, Thompson, covering wages, rules and working conditions for all employees belonging to their crafts and classes. Both unions are affiliated with the American Federation of Labor.

The controversy concerns the proper interpretation and application of the collective bargaining contracts of the two unions to the positions and work performed by the telegraphers' craft on the one hand and the clerks' craft on the other. The avowed purpose of the action is to protect the alleged individual contract rights of individual telegraphers employed at stations on the lines of the defendant carriers. The boundary line between the functions of the two crafts is not clearly defined in their contracts. The plaintiffs contend that the telegrapher craft may, if not according to the express language of their contracts with the carriers, then in light of long custom and usage, do both telegraphic and clerical work. The defendant B.R.C. contends that, except for clerical work incidental to certain positions, all clerical work is covered by its contracts with the defendants.

The subject of dispute in Count I of the petition is a collective Memorandum Agreement entered into on October 15, 1940, effective November 1, 1940, between the B.R.C. and the defendant carriers. This Agreement provides among other things:

"(a) It is recognized and agreed that all of the work referred to in Rule 1 of the Agreement dated November 1, 1940, between the Carrier and the Brotherhood belongs to and will be assigned to employes holding seniority rights and working under the Clerks' Agreement, except as provided below:

"(b) Due to the peculiar conditions existing in station service it is agreed that:

"(1) Where an Agent covered by an agreement other than the Clerks' Agreement is the only employe on duty not covered by the Clerks' Agreement the Carrier may assign such Agent any work covered by the Clerks' Agreement.

"(2) At stations where two employes not covered by the Clerks' Agreement are on duty at the same time and the work covered by the Clerks' Agreement is less than five hours the Carrier may assign such work to those two positions.

"(3) In all instances other than those set out in Items (1) and (2) above, it is agreed that where the work covered by the Clerks' Agreement is less than three hours on any shift of eight hours the Carrier may assign

such work to station employes not covered by the Clerks' Agreement."

The plaintiffs say that this Agreement has been made the basis of claims by the B.R.C. to the exclusive right to perform clerical duties on the lines of the defendant railroads to the exclusion of the members of the O.R.T. engaged in such work contrary to the provisions of their collective contract as it has been applied for many years; that the enforcement of the Agreement would deprive telegraphers of valuable seniority rights and in many instances of their positions; and they demand (1) that it be declared and adjudged wholly void and of no effect in that it violates the Railway Labor Act, supra, and (2) that the defendants be permanently enjoined from enforcing it.

The court held that it was without jurisdiction to decide the controversy presented in Count I because the controversy is not justiciable in a federal court; that it is a jurisdictional dispute between two labor unions in a field covered by the Railway Labor Act, supra; and that such a dispute is governed by the provisions of that Act without a right to review by the court.

If we assume that the collective bargaining contract between the defendant carriers and the O.R.T. should be interpreted and applied as claimed by plaintiffs and that the Memorandum Agreement between the carriers and the B.R.C. means what that union claims for it, then the jurisdiction of the two unions overlap and there exists an undetermined zone of clerical work at the stations on the lines of the defendant carriers jurisdiction over which is claimed by each union and which is the subject of this controversy. In General Committee v. Missouri-K.-T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76, the Supreme Court considered a controversy between two railroad Brotherhoods, the engineers' and firemens' crafts. At page 334 of 320 U.S., at page 151 of 64 S.Ct., the Court said: "It is true that the present controversy grows out of an application of the principles of collective bargaining and majority rule. It involves a jurisdictional dispute—an asserted overlapping of the interests of the two crafts. It necessitates a determination of the point where the authority of one craft ends and the other begins or of the zones where they have joint authority." And the Court held that "* * * in this case no declaratory decree should have been entered for the benefit of any of the parties. Any decision on the merits would involve the granting of judicial remedies which Congress chose not to confer."

■ We agree with the trial court that Count I of the petition pleads a jurisdictional dispute between two railroad labor unions. On this basis the court, on July 10, 1945, in reliance upon the decision of the Supreme Court in General Committee v. Missouri-K.-T. R. Co., supra, held that it did not have jurisdiction. Since then, and on January 14, 1946, the Supreme Court decided the case of Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. ——, reversing the decision of the Circuit Court of Appeals of the Third Circuit reported in 145 F.2d 351.

We are unable to distinguish this case from the Pitney case, supra. In that case a jurisdictional dispute existed between two railroad unions each having a collective bargaining contract with the employing carrier. One of the unions, contending that its contract construed in light of custom and usage gave it jurisdiction over work assigned to the other union, sought an injunction. Its contract had not been interpreted by the Adjustment Board. The Supreme Court, reversing the Circuit Court of Appeals, said: "* * * the court should not have interpreted the contracts for purposes of finally adjudicating the dispute between the unions and the railroad. The dismissal of the cause should * * * be stayed by the District Court, so as to give an opportunity for application to the Adjustment Board for an interpretation of the agreements. Any rights clearly revealed by such an interpretation might then, if the situation warrants, be protected in this proceeding." The rule defining the court's function in a jurisdictional dispute between railroad labor unions arising under the Railway Labor Act is there stated to be that "* * * where the statute is so obviously violated that 'a sacrifice or obliteration of a right which Congress

4

created' to protect the interest of individuals or the public is clearly shown a court of equity could, in a proper case intervene." Citing cases. Here it can not be determined whether or not the statute has been violated until the Adjustment Board has interpreted the telegraphers' contract, if then.

The plaintiffs contend further that the Memorandum Agreement should be declared void because it is an illegal contract. The basis of this argument is that the Agreement "and the proposed enforcement of the same contemplated a change in the working conditions of the appellants." To support their contention they point to § 2, Seventh, and § 6 of the Railway Labor Act, supra. Section 2, Seventh, provides that no carrier "shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in Section 6 of this title." Section 6 requires 30 days' notice of any proposed change. Unless the enforcement of the Memorandum Agreement between the carriers and the clerks contemplates and requires a change in the working conditions of the telegraphers under their collective bargaining agreement with the carriers, this contention is clearly without merit. Section 3, First, (i), of the Act provides that "The disputes between an employee or groups of employees and a carrier or carriers growing out of * * * the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * may be referred by petition * * * to * * * the Adjustment Board * * *." Subsection (n) provides " * * * [that the] Board shall be competent to make an award with respect to any dispute submitted to it"; and subsequent sections provide for the enforcement of the award.

The record shows that plaintiffs have not at any time petitioned the Adjustment Board to interpret and apply their contract with the carriers. Until that has been done they are not in a position to assail the validity or legality of the Memorandum Agreement on the ground alleged. It may be that when their contract is properly interpreted by a tribunal having power to act, there will be no conflict or overlapping of the two contracts. Further, it is shown that at the time of the trial plaintiffs had sustained no injury resulting from an adverse application of the Memorandum Agreement. Finally, no injunction should issue to restrain the enforcement of a labor contract before it has been interpreted by the Adjustment Board, even though injury had been sustained. Order of Railway Conductors v. Pitney, supra.

The District Court, as now shown by the decision in the Pitney case, should not have dismissed Count I of the petition but should have stayed its decision "so as to give an opportunity for application to the Adjustment Board for an interpretation of the agreements."

Count II of the petition alleges that in 1942 the B.R.C. filed claims with the Third Division of the National Railroad Adjustment Board established under the Railway Labor Act alleging that the defendant railroads were violating the Clerks' Agreement by requiring and permitting employees not covered by that Agreement to perform work covered by said Agreement, and requesting that the carrier be required to assign the work involved to employees holding seniority rights under the Clerks' Agreement. These claims affected positions held by individual plaintiffs, Miller, Moore, and Fuselier. The O.R.T. and said individual plaintiffs were denied the right to intervene and be heard in the proceedings before the Board. The claims resulted in awards by the Board, Nos. 2253 to 2258 inclusive, in favor of the claimants

Plaintiffs contend that these awards are illegal and without authority of law because (a) they were entered without proper hearing, (b) without opportunity to the plaintiffs to be heard, and (c) that the Third Division of the Board which acted upon the claims was illegally constituted. They demand that the defendants be permanently enjoined from observing, applying, enforcing or bringing any action for the enforcement of said awards.

In those proceedings before the Railroad Adjustment Board the purpose of plain-

tiffs was to secure an interpretation of the telegraphers' contract with the carriers and thus settle the conflicting claims of the O.R.T. and the B.R.C. to the right to perform clerical work at stations on the lines of the defendant carriers. In other words, plaintiffs sought a hearing before the Board upon and an adjudication of the same jurisdictional question presented in Count I of the petition in this case. The Board denied the right to intervene on the ground that it did not have power under the Railway Labor Act to adjudicate such a dispute. It held that its only power under the Act is to adjudicate adversary claims between employees on the one hand and the carriers on the other; and that it could not adjudicate jurisdictional disputes between two groups of employees. The trial court agreed with the Board's view as to its own powers and denied an injunction.

The Act authorizes the Board to interpret and to apply the collective bargaining contracts of the crafts in controversies between the crafts and the carriers involving the contracts; but it is given no authority to pass on disputes between the crafts. The Act leaves the settlement of inter-craft disputes to conference or to the Mediation or Emergency Boards. And, as pointed out above, only where a right created by Congress has been obliterated may a court of equity intervene to protect the rights of individuals or of the public.

Even though the O.R.T. were not permitted to intervene in the proceeding brought by the B.R.C. involving its contract with the carriers, it still has a right under the Act to commence a proceeding against the carriers and to obtain an order of the Adjustment Board interpreting and applying its own contract with them. Until that step is taken the court can not determine whether a wrong has been done calling for the intervention of a court of equity to protect the rights of individuals or of the public.

Other minor contentions have been argued in the briefs, but they are either without merit or are immaterial to the present situation.

The judgment dismissing both Counts of the petition will be vacated and the court is instructed to stay its decision until a reasonable opportunity is given for an application to the Adjustment Board for an interpretation of the telegraphers' agreement, and the case is remanded for such further proceedings as the facts may warrant.