ILLINOIS CENT. R. CO. v. BROTHERHOOD OF RAILROAD TRAINMEN, ORDER OF RAILWAY CONDUCTORS OF AMERICA, et al.

No. 48 C 1218.

United States District Court
N. D. Illinois, E. D.
March 31, 1949.

---

[1] No opinion for publication.

V. W. Foster, C. A. Helsell, J. H. Wright and Herbert Deany, all of Chicago, Ill., for plaintiff.

Adams, Nelson & Williamson, of Chicago, Ill., for defendants.

SULLIVAN, District Judge.

On August 23, 1948, the Illinois Central Railroad Company filed its complaint for declaratory judgment, setting out that it is a civil proceeding arising under the constitution and laws of the United States, particularly Section 274d of the Judicial Code, Title 28 U.S.C.A. § 400 [now §§ 2201, 2202] and the Railway Labor Act, Title 45 U.S.C.A. Chapter 8.

The complaint alleges that the Railroad has in its employ at certain points on its lines where terminal or freight yards are located a class of workmen known as carmen whose duties are to inspect, maintain and keep in repair the cars of the plaintiff and the appurtenances thereto, including brakes, knuckles, grabirons, air hose, steam hose, etc. That in the performance of their work carmen frequently couple or uncouple the air and steam hose between cars, between train and engine, or between the train and caboose, while trains are in yards, terminals, or repair tracks, and on trains while being broken up or made up in terminals and in yards where carmen are employed and immediately available to do this work. That this work was and still is a necessary and incidental part of the duties of conductors and trainmen engaged in the movement of trains. That disputes arose between the two classes of employees as to which had the duty of coupling or uncoupling air and steam hose at points where carmen were employed and immediately available to do such work. As a result of such disputes and in an effort to conciliate all factions and to expedite the handling of plaintiff's business, plaintiff, on September 19, 1911, at the request of defendants, Brotherhood of Railroad Trainmen and Order of Railway Conductors of America, promulgated a rule published in the Schedule and adopted by plaintiff and the Trainmen and Railway Conductors, which reads as follows: "Trainmen will not be required to couple or uncouple air or steam hose where carmen are employed," which rule continued in force and was adopted and incorporated in the Schedules effective May 31, 1924, and January 1, 1936. That from the time of the adoption of this Rule, and up to the present, trainmen and conductors were required by plaintiff to perform the work of coupling and uncoupling air and steam hose at points where carmen were employed at times when such work was incidental to the work of moving plaintiff's trains and at points and at times when carmen, although employed, were either not on duty or were on duty and not in the vicinity and immediately available to perform such work. During all these years the work was performed by trainmen and conductors in this manner and was considered in con-

formity with the rule, the intent of which was to relieve trainmen and conductors from such work only when these employees and carmen were both present and in the immediate proximity of and available for such work. That on January 1, 1936, plaintiff entered into a revised written Schedule with the Brotherhood of Railroad Trainmen, covering rates of pay, rules and working conditions for trainmen operating freight and passenger trains over plaintiff's lines; copy of said Schedule is attached to the complaint marked Exhibit A. That on May 31, 1924, plaintiff entered into a revised written Schedule with the Order of Railway Conductors of America, covering rates of pay, rules and working conditions for conductors operating freight and passenger trains over plaintiff's lines, copy of said Schedule being attached to the complaint and marked Exhibit B. That Schedules A and B set out the rates of pay and rules governing working conditions under which all conductors and trainmen in the freight and passenger service are to perform their duties. That Article 54 of the Schedule with the Brotherhood of Railroad Trainmen provides: "Trainmen shall not be required to couple or uncouple air or steam hose where carmen are employed." Article 52 of the Schedule with the Order of Railway Conductors provides: "Conductors will not be required to couple or uncouple air or steam hose where carmen are employed." That based upon the provisions of Article 54 and Article 52 of said Schedules certain individual defendants now seek to place an entirely new construction on the aforesaid Articles by presenting claims for an additional day's pay for coupling and uncoupling air hose at various points on plaintiff's lines. That there is no basis in Schedules A and B for the allowance of such additional pay and plaintiff has refused to honor such claims. That plaintiff is entitled to have the rights and other legal relations between itself and the defendants under said Schedules determined and declaratory judgment rendered to that end. The complaint then asks that this court render declaratory judgment in favor of plaintiff decreeing that Article 54 and Article 52, which provide that trainmen or conductors "will not be required to couple or uncouple air or steam hose where carmen are employed" are directory only, and do not entirely relieve conductors and trainmen from doing this work and do not afford any basis for a claim for additional compensation when conductors or trainmen couple or uncouple air or steam hose at points where carmen are employed in order that their trains may be moved with reasonable dispatch. And further that conductors and trainmen are not entitled to additional compensation for doing this work at points where carmen are employed but not on duty, or not immediately available in the proximity of the work. And that there is no provision in the Schedules of rates of pay, rules and working conditions of conductors and trainmen to warrant plaintiff in allowing an additional day's pay for doing this work at points where carmen are employed. That the court render such other judgment relief as may be proper and equitable, and decree that plaintiff be awarded such costs as may be incurred in this proceeding.

On October 4, 1948, defendants filed a motion to dismiss the complaint and affidavit in support thereof on the following grounds:

1. Whether indispensable parties defendant have been omitted from this suit.

2. Whether the employees sought to be bound by this action are before the court.

3. Whether the complaint presents a justiciable controversy.

4. Whether the complaint presents a proper case for declaratory judgment relief.

I shall first dispose of the question of whether the complaint presents a justiciable controversy.

Plaintiff contends that this is an action on a written contract, and involves only the issue of the construction of a revised written Schedule dated January 1, 1936, between plaintiff and the Brotherhood of Railroad Trainmen, covering rates of pay, rules and working conditions for trainmen operating freight and passenger trains over the lines of plaintiff; and a revised written Schedule dated May 31, 1924, between plaintiff and the Order of Railway Con-

ductors of America, covering rates of pay, rules and working conditions for conductors operating freight and passenger trains over the lines of plaintiff.

Defendants urge that the particular claims to which the complaint makes reference in Paragraph 20 were, pursuant to the provisions of the Railway Labor Act and the rules and regulations of the National Railroad Adjustment Board, referred to and filed with the First Division of the Board by notice mailed, on July 30, 1948, to the Executive Secretary of the First Division. On August 2, 1948, the Executive Secretary of the First Division served notice on plaintiff of the filing of the dispute with the Board. On August 19, 1948, the Brotherhood made an "ex parte" submission, that is, it stated the employee's position as to the claims pursuant to the provisions of the Railway Labor Act and the rules and regulations of the National Railroad Adjustment Board, First Division. The present suit was filed by plaintiff on August 23, 1948.

In opposition, plaintiff has filed an affidavit of the Executive Secretary of the National Railroad Adjustment Board, stating that the instant dispute has not been docketed or given a docket number, which indicates that the First Division of the National Railroad Adjustment Board has not assumed jurisdiction of the subject matter of this action.

From the pleadings and the briefs I conclude that trainmen and conductor employees of plaintiff have for many years worked under a variety of contracts containing various provisions as to coupling and uncoupling of air or steam hose, and that there has been disagreement between plaintiff and the trainmen and conductor employees as to the interpretation of the Schedule provisions, and that such disputes have been pending for a number of years.

The Railway Labor Act is the product of fifty years of legislation by Congress in the field of regulation of the labor relations of interstate railroads. Specifically it governs all railroad labor disputes, 45 U.S.C.A. § 151 et seq. In enacting the present Act Congress stated that the legislation was intended, 45 U.S.C.A. § 151a(5):

"to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

The present dispute is one growing out of the interpretation or application of agreements between plaintiff and trainmen and conductor employees covering rates of pay, rules, or working conditions. Plaintiff by its complaint is asking that this court by a declaratory judgment decree that Articles 54 and 52, here in dispute, be interpreted to mean that the words "will not be required to couple or uncouple air or steam hose where carmen are employed" are directory only and do not entirely relieve conductors and trainmen from doing this work and do not afford a basis for additional compensation.

The conductors and trainmen on the other hand insist that they have never acquiesced in the interpretation which plaintiff seeks by its complaint to establish for the Schedule provisions concerning coupling and uncoupling of air and steam hose but have always protested whenever violations by plaintiff of such Schedule provisions have come to their attention.

In Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 324, 90 L. Ed. 318, the Supreme Court held that the availability of the administrative remedy in the National Railroad Adjustment Board precluded the exercise of jurisdiction by the court for the adjudication of a dispute relating to the interpretation of a contract between the carrier and the conductors, the court saying:

"But Congress has specifically provided for a tribunal to interpret contracts such as these in order finally to settle a labor dispute. * * * Not only has Congress thus designated an agency peculiarly competent to handle the basic question here involved, but as we have indicated in several recent cases in which we had occasion to discuss the history and purpose of the Railway Labor Act, it also intended to leave a minimum responsibility to the courts.

* * * * * *

"We have seen that in order to reach a final decision on that question the court

first had to interpret the terms of O.R.C.'s collective bargaining agreements. The record shows, however, that interpretation of these contracts involves more than the mere construction of a 'document' in terms of the ordinary meaning of words in their position. See W. P. Brown & Sons Lumber Co. v. Louisville & N. R. Co., 299 U.S. 393, 396, 57 S.Ct. 265, 266, 81 L.Ed. 301 [303]; Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 [946]. For O.R.C.'s agreements with the railroad must be read in the light of others between the railroad and B.R.T. And since all parties seek to support their particular interpretation of these agreements by evidence as to usage, practice and custom that too must be taken into account and properly understood. The factual question is intricate and technical. An agency especially competent and specifically designated to deal with it has been created by Congress. Under these circumstances the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue. * * * the court should not have interpreted the contracts for purposes of finally adjudicating the dispute between the unions and the railroad."

In the case of Missouri-Kansas-Texas R. Co. v. Randolph, 8 Cir., 164 F.2d 4, 7, in denying jurisdiction to interpret the contract, the court said:

"The question of interpretation and application of the labor contracts here is of the same intricacy and calls for the same special familiarity with railroad work and labor relations as in the Conductors' case (Order of Railway Conductors v. Pitney) supra."

Referring to the claims for additional pay filed by employees represented by the Brotherhood of Railroad Trainmen, the court said:

"Their demands and declaration of intention to claim pay are directed solely to the enforcement against the railroads of their own claim of exclusive right under their own contract. An alternative course open to them was to call a strike. The course they have adopted is clearly within the purview of the Railway Labor Act which provides for determination by the Adjustment Board of the demands for the pay which result from it. * * * The railroad industry is not static and the machinery for reconciliation of differences among those who carry it on is adapted to meet the problems as they arise from day to day in localities, on different roads and under varying conditions."

In Order of R. R. Telegraphers v. New Orleans, T. & M. Ry. Co., 8 Cir., 156 F.2d 1, 4, where the Circuit Court of Appeals vacated the judgment of the trial court and relegated the parties to the Adjustment Board for construction and interpretation of a union contract, the court said:

"The record shows that plaintiffs have not at any time petitioned the Adjustment Board to interpret and apply their contract with the carriers. Until that has been done they are not in a position to assail the validity or legality of the Memorandum Agreement on the ground alleged. It may be that when their contract is properly interpreted by a tribunal having power to act, there will be no conflict or overlapping of the two contracts."

In Brotherhood of Railroad Trainmen v. Texas & P. Ry. Co., 5 Cir., 159 F.2d 822, 826, the plaintiff carrier instituted an action for declaratory judgment to resolve a dispute between the carrier and the Brotherhood of Railroad Trainmen together with some thirty individual employees of the carrier. The defendant Brotherhood of Railroad Trainmen denied the existence of a justiciable controversy. In sustaining this contention of lack of jurisdiction, the Court of Appeals said:

"The cases relied on by appellants state the general rule. Those cited by the carrier appellees and the recent case of Order of Railway Conductors of America v. Swan [329 U.S. 520], 67 S.Ct. 405 [91 L.Ed. 471], state narrow exceptions to it. * * * In the Steele [Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173] and Tunstall [Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187] cases, the court fully recognized the broad scope and binding force of the general rule as declared in the Switchmen's Union [Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61], and the General Committee [General Committee of Adjust-

 

ment of Brotherhood of Locomotive Engineers v. Missouri-K.-T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76], cases."

In Atlantic Coast Line Railroad Company v. Brotherhood of Railroad Trainmen et al.,[1] recently decided by the District Court for the Southern District of Florida, the railroad sought a declaratory judgment adjudicating a dispute between the carrier and the Brotherhood of Railroad Trainmen concerning interpretation of a collective agreement. The Brotherhood and numerous individuals were made parties defendant. The Brotherhood of Locomotive Firemen and Enginemen was permitted to intervene. The District Court dismissed the action on motion of defendants, saying:

"The record presents a typical controversy between a Railway and its employees involving the interpretation of labor contracts regulating working conditions.

"Under the Railway Labor Act, 45 U.S. C.A. 153, First (i), and in the circumstances here presented, the interpretation of these contracts is initially a function of the Railway Adjustment Board, not the Courts. Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; Order of Railroad Telegraphers v. New Orleans, T. & M. Ry. Co., 8 Cir., 156 F.2d 1; Missouri-Kansas-Texas R. Co. v. Randolph, 8 Cir., 164 F.2d 4. The same would be true even though the Brotherhood of Locomotive Firemen & Enginemen had not intervened."

■ It is evident that the purpose of the Railway Labor Act was to provide means and procedures for settlement of labor disputes within the railroad industry itself. Congress was here dealing with a highly specialized field. Rules governing pay and working conditions of employees in the rail transportation industry are intricate and complex, and agreements regarding them must of necessity be formulated by practical railroad men who have a thorough knowledge of railroad operations. Each separate rule has a long history and years of experience with the customs and practices in the industry are essential to interpretation and application of such rules. A rule may very well mean one thing to a person totally unfamiliar with the railroad industry and quite another thing to a practical railroad man familiar with railroad operation and the precise question to be covered.

■ Courts hesitate to supersede the special agencies created by the Railway Labor Act to settle railroad labor disputes, particularly those disputes which involve interpretation of technical contracts between railroads and their employees, which demand a consideration of usages, customs and history, as well as general familiarity with railroad operations. I believe that the present dispute presents a typical controversy between a railroad and its employees involving the interpretation of labor contracts which regulate pay, rules and working conditions. Under the Railway Labor Act the interpretation of such contracts is initially a function of the Railway Adjustment Board, and not of the courts. Hampton et al. v. Thompson et al., 5 Cir., 171 F.2d 535.

After a careful consideration of the pleadings and the briefs, I am of the opinion that I lack jurisdiction to hear and adjudicate this case.

Defendants' motion to dismiss is accordingly allowed.

---

[1] No opinion for publication.